## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES BARR, MARY BIRDOES, JEFF BOWLIN, and RYAN LANDIS, on behalf of themselves and all other persons similarly situated,<br><br>      Plaintiffs,<br>  vs.<br><br>DRIZLY, LLC f/k/a DRIZLY, INC., and THE DRIZLY GROUP, INC.,<br><br>      Defendants. | **Case No. 1:20-CV-11492**<br><br><br>**The Honorable Leo T. Sorokin**<br>**Magistrate Judge Donald L. Cabell** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

## <u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

I.  The Court Should Grant Final Approval of the Settlement ....................................................2

    A.  The Settlement is Procedurally Fair ..................................................................................3

        1.  Plaintiffs and Class Counsel Have Adequately Represented the Interests of the Settlement Class. ............................................................................................3

        2.  The Settlement is the Product of Arm's Length Negotiations. .........................................5

    B.  The Settlement Is Substantively Fair ...............................................................................5

        1.  The Potential Costs and Risks of Continued Litigation Weigh in Favor of Final Approval. ..........................................................................................................6

        2.  The Settlement Equitably Distributes Relief Among Class Members and Provides for a Reasonable Attorneys' Fee Award, Satisfying the Remaining Rule 23(e)(2) Factors for Approval. ..........................................................................8

        3.  The Settlement Amount Falls Within a Range of Reasonableness that Supports Granting Final Approval. .....................................................................................9

        4.  The Positive Reaction of the Settlement Class Weighs in Favor of Approval. ..............11

        5.  Plaintiffs' Comprehensive Investigation and Informed Mediation Process Support Approving the Settlement at this Stage of the Litigation. ...............................13

        6.  The Ability of the Defendants to Withstand a Greater Judgment Did Not Negatively Impact Settlement Negotiations. .......................................................14

II.  The Proposed Notice Program Satisfied Rule 23 and Due Process by Providing Class Members with Adequate Notice of Settlement. .............................................................15

III.  The Proposed Class Should be Certified for Final Approval of the Proposed Settlement. 16

CONCLUSION ................................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bezdek v. Vibram USA Inc.*,
    79 F. Supp. 3d 324 (D. Mass. 2015) ...............................................................................7, 10, 13

*Bussie v. Allmerica Financial Corp.*,
    50 F. Supp. 2d 59 (D. Mass. 1999) ..........................................................................................12

*Carlson v. Target Enter., Inc.*,
    447 F. Supp. 3d 1 (D. Mass. 2020) ............................................................................................2

City P'ship Co. v. Atlantic Acquisition Ltd. P'ship,
    100 F.3d 1041 (1st Cir. 1996) ................................................................................................2, 5

*Crane v. Sexy Hair Concepts, LLC*,
    No. 17-10300, 2019 WL 2137136 (D. Mass. May 14, 2019)..................................................11

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).................................................................................................3, 9

*Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415,
    2019 WL 6972701 (D. Colo. Dec. 16, 2019)...................................................................6, 7, 11

*Henderson v. Bank of N.Y. Mellon, N.A.*,
    332 F. Supp. 3d 419 (D. Mass. 2018) ......................................................................................17

Hill v. State Street Corp.,
    No. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015)..............................................16

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018)............................................................................................10

In re Cabletron Sys., Inc. Sec. Litig.,
    239 F.R.D. 30 (D.N.H. 2006) .................................................................................................12

*In re Citrix Data Breach Litig.*,
    No. 19-61350, 2021 WL 2410651 (S.D. Fla. June 11, 2021)...................................................11

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003)............................................................................................6, 12

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020).............................................11

In re Fleet/Norstar Sec. Litig.,
    935 F. Supp. 99 (D.R.I. 1996)..................................................................................................2

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,
    55 F.3d 768 (3d Cir. 1995)...........................................................................................9

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
    270 F.R.sD. 45 (D. Mass. 2010) ................................................................................17

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020)........................................................................14

In re PaineWebber P'ships Litig.,
    171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................................9

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    588 F.3d 24 (1st Cir. 2009)..........................................................................................4

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    No. 3:15-md-2633, 2019 WL 3410382 (D. Or. July 29, 2019) ................................10

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*,
    No. 11-md-02208, 2014 WL 6968424 (D. Mass. Dec. 9, 2014) ................................5

In re Relafen Antitrust Litig.,
    231 F.R.D. 52 (D. Mass. 2005)....................................................................................9

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
    No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) .........................11

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    No. 14-md- 2522 (PAM)(JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015).....................6, 7

*In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Coll. Practices Act (FDCPA) Litig.*,
    No. 2:13-MD-2426, 2016 WL 543137 (D. Me. Feb. 10, 2016) ................................4

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007)...............................................................3, 4, 6, 7, 9, 11, 12

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
    No. 16-MD-02752, 2020 WL 4212811 (N.D. Cal. July 22, 2020).............................6

*Jean-Pierre v. J&L Cable TV Servs, Inc.*,
    No. 1:18-cv-11499, 2021 WL 1862102, (D. Mass. May 10, 2021)............................3

Lazar v. Pierce,
    757 F.2d 435 (1st Cir. 1985)........................................................................................2

*Linnins v. HAECO Ams., Inc.*,
    No. 1:16CV486, 2018 WL 5312193 (M.D.N.C. Oct. 26, 2018) ................................7

*McLaughlin v. Liberty Mut. Ins. Co.*,
    224 F.R.D. 304 (D. Mass. 2004)....................................................................................17

*Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech.*,
    No. 3:15-cv-30024-KAR, 2020 WL 1495903 (D. Mass. Mar. 27, 2020) ................................15

*Rivero Souss v. Banco Santander S.A.*,
    No. 09-2305 (FAB), 2011 WL 13350165 (D.P.R. June 9, 2011).................................................9

*Roberts v. TJX Co., Inc.*,
    No. 13-cv-13142, 2016 WL 8677312 (D. Mass. Sept. 30, 2016)...............................5, 7, 12, 14

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000)......................................................................................13

*Saunders v. Getchell Agency, Inc.*,
    No. 1:13-cv-00244, 2015 WL 1292594 (D. Me. Mar. 23, 2015) .............................................17

*Voss v. Rolland*,
    592 F.3d 242 (1st Cir. 2010)..........................................................................................2

*Walsh v. Popular, Inc.*,
    839 F.Supp.2d 476 (D.P.R. 2012).................................................................................8

## Other Authorities

Nicola F. Sharpe, *Corporate Cooperation through Cost-Sharing*,
    16 MICH. TELECOMM. & TECH. L. REV. 109 (2009) ...............................................................11

## Rules

FED. R. CIV. P. 23....................................................................................................passim

## INTRODUCTION

Plaintiffs James Barr, Mary Birdoes, Jeff Bowlin, and Ryan Landis (collectively "Plaintiffs") by and through their undersigned counsel, respectfully move for final approval of the settlement (the "Settlement") with Defendants Drizly, LLC f/k/a Drizly, Inc. and The Drizly Group, Inc. (collectively "Drizly") and entry of the proposed Final Approval Order and Final Judgment filed herewith, pursuant to Rule 23 of the Federal Rules of Civil Procedure.[1]

On March 30, 2021, the Court previously granted preliminary approval of the Settlement, and in doing so found that it will likely be able to approve the Settlement and certify the Settlement Class. *See* Prelim. Approval Order, ECF No. 54 ¶¶ 3, 5. The factors that supported preliminary approval of the Settlement have only been bolstered by subsequent events. To date, 2,357,030 Notices have been emailed directly to affected Class Members and 150,981 claims have been filed. *See* Declaration of Mark Cowen Regarding Notice and Administration dated July 13, 2021 ("Cowen Decl.") ¶¶ 4, 12, filed herewith.  Thus far, Class Counsel is aware of only thirty-seven potential Class Members choosing to opt out, and no objections have been made. Cowen Decl. ¶¶ 10-11; Declaration of Christian Levis in Support of (A) Plaintiffs' Motion for Final Approval of the Class Action Settlement; and (B) Class Counsel's Motion for Attorneys' Fees and Expenses, and Plaintiffs' Application for an Incentive Award, dated July 13, 2021 ("Levis Declaration" or "Levis Decl.") ¶ 46, filed herewith. For the reasons articulated below and in Plaintiffs' memorandum in support for preliminary approval of the settlement (ECF No. 52-1) (the "Prelim.

---

[1] Unless otherwise noted, capitalized terms not defined herein have the same meaning as in the Stipulation and Agreement of Settlement dated March 26, 2021 (the "Agreement" or "Settlement Agreement"). ECF No. 52-4. Unless otherwise noted, internal citations and quotation marks are omitted and ECF citations are to the docket.

Approval Mem."),[2] the Settlement is an excellent result for the Class, and the Court should grant final approval.

## ARGUMENT[3]

### I.    The Court Should Grant Final Approval of the Settlement

Settlement of class action litigation is favored by federal courts. *See, e.g., Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985); *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043-44 (1st Cir. 1996); *see also In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 105 (D.R.I. 1996) ("The district court's discretion is circumscribed by the long-recognized policy of encouraging settlements."). A district court may approve a class action settlement if it finds it to be "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); *accord Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010). The amended Rule 23 sets out the factors to guide the Court's analysis, with Rule 23(e)(2)(A) and (B) focusing on the procedural fairness of a settlement and Rule 23(e)(2)(C) and (D) focusing on substantive fairness. *See* FED. R. CIV. P. 23 advisory committee's notes to 2018 amendment (stating Rule 23 focuses on the "core concerns of procedure and substance" when deciding whether to finally approve a settlement).

To approve a class action settlement as procedurally fair, Rule 23 requires the Court to find in part that, "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length[.]" FED. R. CIV. P. 23(e)(2)(A)-(B); *see also Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 3 (D. Mass. 2020) (granting final approval where the class representative and class counsel diligently represented the class and the settlement was reached following an adversarial and contentious process that included mediation). A settlement

---

[2] Plaintiffs incorporate by reference the arguments made in their motion for preliminary approval, which similarly supports this motion for final approval.

[3] The Levis Declaration describes the procedural history of this Action.

is substantively fair when, "the relief provided for the class is adequate," accounting for the following factors:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]

FED. R. CIV. P. 23(e)(2)(C). The Court is also required to confirm that the Settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D); *accord Jean-Pierre v. J&L Cable TV Servs, Inc.*, No. 1:18-cv-11499, 2021 WL 1862102, at \*3 (D. Mass. May 10, 2021). The amended Rule 23(e)(2) requirements overlap with the *Grinnell* factors that courts in this Circuit consider in approving class action settlements. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007) (citing *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*")).[4] Courts have also considered the "ability of the defendants to withstand a greater judgment" when evaluating settlements. *Grinnell*, 495 F.2d at 463, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Under both the Rule 23(e)(2) factors and First Circuit precedent, this Settlement is suitable for final approval.

### A. The Settlement is Procedurally Fair

#### 1. Plaintiffs and Class Counsel Have Adequately Represented the Interests of the Settlement Class.

As described in Plaintiffs' Prelim. Approval Mem., Plaintiffs are adequate Class representatives. *See* Argument § I.A.1. Their interests completely align with the interests of the Class, as each named Plaintiff, like the members of the Settlement Class, is a Drizly customer

---

[4] The *Grinnell* factors include: "(1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration." *In re Tyco*, 535 F. Supp. 2d at 259. The last three factors are encompassed in the considerations under FED. R. CIV. P. 23(e)(2)(A)-(C).

whose personal information was compromised as a result of the Data Breach. *Id.*; *see also id.* at Argument § II.A.4.  Plaintiffs and the members of the Settlement Class seek the same relief from the same injury. *See In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Coll. Practices Act (FDCPA) Litig.*, No. 2:13-MD-2426, 2016 WL 543137, at \*4 (D. Me. Feb. 10, 2016) (finding class representatives adequate where they "suffered the same injury as class members").

"The duty of adequate representation [also] requires counsel to represent the class competently and vigorously and without conflicts of interest with the class." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009); *accord* FED. R. CIV. P. 23(g); *see also In re Tyco*, 535 F. Supp. 2d at 259 (listing "quality of counsel" and "conduct of the negotiations" as *Grinnell* factors). Class Counsel's extensive class action and data breach litigation experience, and their efforts during the Action, further confirm their adequacy to serve on behalf of the Class. *See* Mar. 29, 2021 Declaration of Christian Levis in Support of Plaintiffs' Preliminary Approval Motion ("Levis Prelim. Approval Decl."), Exs. 6 – 10, ECF Nos. 52-9 – 52-13 (Class Counsel firm resumes). Class Counsel were well-versed in the relevant facts and law, conducted an extensive investigation, formulated the theory of this lawsuit, and thus understood the potential strengths and risks of Plaintiffs' claims. Prior to filing suit, Class Counsel gained insights on the strengths and weaknesses of Plaintiffs' claims while reviewing public disclosures and reports concerning the Data Breach, as well as interviewing potentially impacted individuals. Levis Decl. ¶ 17. Later in the litigation, Class Counsel made requests for documents and information to Drizly that were needed to make sure Class Counsel were knowledgeable of the relevant facts. *Id.* ¶¶ 29-30. Class Counsel met and conferred with Drizly and issued follow up requests, and then used that to further Class Counsel's ongoing investigation, settlement strategy, and understanding of the case. *Id.* As a result of these efforts Class Counsel was "fully informed of the legal bases for the

claims and defenses herein," which allowed them to engage in "extensive negotiations" and effectively represent the class. *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, No. 11-md-02208, 2014 WL 6968424, at *3 (D. Mass. Dec. 9, 2014).

### 2.   The Settlement is the Product of Arm's Length Negotiations.

There is a strong presumption that a proposed class action settlement is fair, reasonable, and adequate when the settlement is the result of arm's-length negotiations. *See City P'Ship*, 100 F.3d at 1043 (where "sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement"). The Settlement here was the result of hard-fought negotiations before an experienced mediator— the Honorable Diane M. Welsh (Ret.), U.S.M.J. (E.D. Pa.)—during which each Party forcefully advocated for its position. *See* Levis Decl. ¶¶ 8, 28; *see also* July 13, 2021 Declaration of Diane M. Welsh (Ret.) of JAMS in Support of Plaintiffs' Motion for Final Approval of the Class Action Settlement, filed herewith. Courts in this District recognize the use of a mediator to assist the parties in resolving their dispute supports a finding of procedural fairness.  *See Roberts v. TJX Co., Inc.*, No. 13-cv-13142, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) ("[T]he participation of an experienced mediator, also supports the Court's finding that the Settlement is fair, reasonable, and adequate.").

After evaluating Plaintiffs' and Class Counsel's involvement in achieving this Settlement and the nature of the settlement negotiations with Drizly, the Court should conclude that the Settlement is a procedurally fair result for the Class that satisfies the requirements of Rule 23 and warrants approval by the Court.

### B.  The Settlement Is Substantively Fair

While Class Counsel believe that Plaintiffs' claims would have prevailed had the Action advanced, there was nevertheless considerable risk of a less favorable result (including no recovery at all) if Plaintiffs were compelled to arbitration, or if the litigation continued through trial, post-

trial motions and appeal. Given the risks, the Settlement achieves a substantial recovery for the Class and unquestionably satisfies the factors for approval under Rule 23(e)(2)(C)-(D) and the *Grinnell* factors.

> **1.  The Potential Costs and Risks of Continued Litigation Weigh in Favor of Final Approval.**

In determining the fairness of a settlement, courts must weigh the settlement against the costs, risks, and delay of trial and appeal. *See also* FED. R. CIV. P. 23(e)(2)(C)(i); *accord In re Tyco*, 535 F. Supp. 2d at 259 (listing "comparison of the proposed settlement with the likely result of litigation" as a *Grinnell* factor). Data breach cases are generally regarded as complicated class action cases because they involve many novel and highly technical subject areas. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("[D]ata breach cases… are particularly risky, expensive, and complex."). Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled … many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md- 2522 (PAM)(JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015), *rev'd and remanded on other grounds*, 847 F.3d 608 (8th Cir. 2017), *amended,* 855 F.3d 913 (8th Cir. 2017), *and aff'd*, 892 F.3d 968 (8th Cir. 2018).

Another issue attendant in continued litigation is the expense of conducting further discovery. In complex cases, such as data breach and privacy cases, these costs can be especially extensive. *See, e.g.*, *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-MD-02752, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020) (noting that discovery is one of the significant expenses for continuing a data breach litigation); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 212 (D. Me. 2003) (finding that, in the absence of the settlement, the case would like require "significant and expensive additional discovery; [and]

hiring more experts and opposing the defendants' experts"). Given the highly technical nature of data breach litigation, it is very likely that discovery costs in this Action would be substantial. Such costs would have been amplified by the involvement of experts to further analyze and explain the data and their relevance to the case. *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 344 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (noting that potential expenses stemming from further discovery can "decreas[e] the net benefit of any damages awarded obtained at trial").

In addition, there is no assurance the Court would certify a litigation class or that the litigation class would be maintained throughout the Action. This is an additional significant risk to the ultimate recovery for the proposed Class. *See Bezdek*, 79 F. Supp. 3d at 344 (observing that barriers to surviving summary judgment supported granting final approval of settlement); *In re Tyco,* 535 F. Supp. 2d at 260 (granting final approval because even "[i]f the case survived summary judgment and went to trial, plaintiffs would face additional risk, uncertainty, and delay"). Some courts have asserted that data breach cases may be subject to challenges at the class certification stage. *See Gordon*, 2019 WL 6972701, at *1 ; *see also In re Target Corp. Customer Data Sec. Breach Litig.*, 2015 WL 7253765, at *2 (noting the legal complexity of certifying a litigation class in a data breach action); *Linnins v. HAECO Ams., Inc.*, No. 1:16CV486, 2018 WL 5312193, at *2 (M.D.N.C. Oct. 26, 2018) (noting mixed results for plaintiffs in data breach and data disclosure cases); *Roberts*, 2016 WL 8677312, at *7 (observing that granting final approval of settlement is more appropriate where the plaintiffs can identify potential issues with certifying the underlying class).

At this juncture, the Settlement results in an immediate, substantial, and tangible recovery for the Class. Consideration of this factor supports approval of the Settlement when compared to the many potential hurdles that would remain if litigation were to continue.

2. **The Settlement Equitably Distributes Relief Among Class Members and Provides for a Reasonable Attorneys' Fee Award, Satisfying the Remaining Rule 23(e)(2) Factors for Approval.**

In approving a settlement, Rule 23(e)(2) also requires courts to evaluate the effectiveness of distributing relief to Class Members (including whether Class Members are treated equitably in the process), the proposed attorney's fee award, and if applicable, any other agreements that are related to the Settlement. FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv); 23(e)(2)(D). As discussed in the Prelim. Approval Mem., the distribution of the Settlement awards an equal individual cash payment of $14 and a credit against the cost of service fees for future orders on Drizly's platform to all Authorized Claimants, subject to an across the board *pro rata* reduction in the event that an extraordinary number of Class Members file claims. *See* Prelim. Approval Mem. at 4. This allocation plan ensures that every Class Member who submits a valid claim will receive a portion of the settlement fund, ensuring that the fairness test is met. *Walsh v. Popular, Inc.*, 839 F.Supp.2d 476, 482 (D.P.R. 2012) (finding proposed allocation plan to be fair where it ensured that every class member who submitted a valid claim would receive a portion of the settlement fund). Accordingly, the effectiveness of the distributing the Settlement and the equitable manner in which it treats Class Members should weigh in favor of approval of the Settlement.

Class Counsel seek attorneys' fees of $1,186,967.05 and reimbursement of $13,032.95 for litigation costs and expenses.  As further described in Class Counsel's Fee and Expense Application, filed herewith, the requested award is consistent with awards granted in similarly complex and risky class actions, and is warranted in this action. Similarly, Plaintiffs' request for an incentive award is comparable to awards issued in other class actions.  Absent the efforts of Plaintiffs and Class Counsel, the Class would likely not have obtained this enhanced recovery. These proposed awards will be paid separately by Drizly and will not diminish the funds available to Class Members, further supporting the fairness, reasonableness, and adequacy of the Settlement.

3.  **The Settlement Amount Falls Within a Range of Reasonableness that Supports Granting Final Approval.**

When assessing the reasonableness of a settlement, courts compare "the proposed settlement with the likely result of continued litigation." *In re Tyco*, 535 F. Supp. 2d at 259; *accord In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) (evaluating a settlement by assessing "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing"). When determining whether a settlement falls within the "range of reasonableness," the issue is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case. Thus, the court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462.

Courts agree that the determination of a "reasonable" settlement "is not susceptible of a mathematical equation yielding a particularized sum[.]" *In re PaineWebber P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997); *accord In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 73 (D. Mass. 2005) ("[A] high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes…"). Instead, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Rivero Souss v. Banco Santander S.A.*, No. 09-2305 (FAB), 2011 WL 13350165, at \*7 (D.P.R. June 9, 2011) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005)). Taking into account the risk of a potential motion to dismiss by the Defendants and potential later decisions, a single adverse ruling could extinguish all claims for the entire Class and result in no recovery. As such, the expected value of continued litigation is low.

9

That having been said, the proposed Settlement represents a "reasonable and appropriate [compromise] in light of the uncertainty of a better outcome at trial" and therefore the settlement should be viewed favorably. *Bezdek*, 79 F. Supp. 3d at 347. Prior to negotiating the settlement, Class Counsel investigated a variety of potential claims against Drizly and estimated that the maximum potential extent of liability against Drizly. Based on that investigation, if the total Settlement Value is considered, the recovery would represent between 5.36% and 11.37% of the potential damages for the Class under the Massachusetts Consumer Protection Act. *See* Levis Decl. ¶ 38. Depending on the number of Class Members that file a claim, on an individual basis, a Class Member's recovery could be as high as 64% of the statutory damages amount.  *Id.*

In light of the litigation risks, the proposed Settlement provides a significant recovery for Class Members that is within the range of reasonableness. When evaluating past settlements in data breach cases, courts have consistently approved settlements that similarly involved awarding class members with payouts in the form of individual cash payments. *See, e.g., In re The Home Depot, Inc., Customer Data Security Breach Litig.*, 1:14-md-02583 (N.D. Ga.), Final Approval Order, ECF 343 at 3-4 (approving a settlement which awarded each class member a "fixed payment award" in addition to documented damages); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633, 2019 WL 3410382, at *22 (D. Or. July 29, 2019) (approving a settlement which guaranteed a minimum cash payment for class members who lacked out-of-pocket expenses); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 319 (N.D. Cal. 2018) (approving a settlement which offered class members a cash payment as an alternative to credit monitoring services); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800, 2020 WL 256132, at *2 (N.D. Ga. Mar. 17, 2020) (same); *In re Citrix Data Breach Litig.*, No. 19-61350, 2021 WL 2410651, at *3 (S.D. Fla. June 11, 2021) (same).

When evaluating the value of a settlement in a data breach case, courts have also been willing to credit "changes to [a] Defendant's data security practices" that have been secured in negotiations, recognizing that "all Class Members will benefit from [such] changes." *Gordon*, 2019 WL 6972701, at *1; *accord In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) (crediting the fact that the settlement required the defendant to maintain improved security practices). The Settlement includes the requirement that Drizly will implement and maintain certain data security measures for two years, ensuring a greater public value for the Settlement. *See* Levis Decl. ¶ 7. The value of these changes is estimated to be approximately $2,300,000. *See* Settlement Agreement § 4.

This Settlement also provides a significant recovery compared to the net expected value of continued litigation. *See* Nicola F. Sharpe, *Corporate Cooperation through Cost-Sharing*, 16 MICH. TELECOMM. & TECH. L. REV. 109, 110 (2009) ("Discovery accounts for about 50% of all litigation costs and up to 90% of the costs in the top 5% of the most expensive cases."). If Class Members had to await a trial and inevitable appeal, they would not receive benefits for many years, if at all. *See Crane v. Sexy Hair Concepts, LLC*, No. 17-10300, 2019 WL 2137136, at *2 (D. Mass. May 14, 2019) ("[A]n immediate recovery is valuable to the Class, given the potential need for protracted litigation to resolve all factual and legal disputes among the Parties."). Instead, the Settlement would provide immediate relief to Class Members and eliminate the risks of continued litigation.

### 4. The Positive Reaction of the Settlement Class Weighs in Favor of Approval.

To further support approval of a settlement, courts look to the class' reaction to the settlement. *In re Tyco*, 535 F. Supp. 2d at 259 (citing the "reaction of the class to the settlement" as an additional *Grinnell* factor). It is important to note that the existence of an objection to a settlement does not by itself prevent the court from approving the agreement. Rather, this factor

11

weighs in favor of granting final approval so long as the reaction of the class is "positive." *In re Tyco¸* 535 F. Supp. 2d at 261 (noting that "only a small number" of class members had raised objections and that their objections were "without merit"); *accord Bussie v. Allmerica Financial Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("[The low] number of requests for exclusion from the settlement, as well as the number and substance of objections filed ... constitutes strong evidence of fairness of proposed settlement and supports judicial approval."). In cases where a smaller portion of class members respond to the notice of settlement, this factor can still weigh in favor of approval where the responding class members react positively and offer little objection. *See Roberts*, 2016 WL 8677312, at *6.

The Class Notice advised Class Members of their right to object to the terms of the Settlement and Class Counsel's request for attorneys' fees and reimbursement of expenses and to opt out of the Settlement. *See* Cowen Decl. ¶ 7. To date, no Class Member have objected to the Settlement, Class Counsel's request for an award of attorneys' fees and expenses, or the incentive award, and only thirty-seven potential Class Members have opted out of the Settlement. *See* Levis Decl. ¶ 46; Cowen Decl. ¶¶ 10-11. These levels of participation support a finding of the settlement's reasonableness. *See Bussie*, 50 F. Supp. 2d at 77 (finding a 0.003% objection rate and 0.05% requesting exclusion was *de minimis*); *In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35-36 (D.N.H. 2006) (approving class action settlement after no objections and three opt-outs); *Compact Disc*, 216 F.R.D. at 211 (finding 11 objections representing 22 class members and 121 opt outs "miniscule" where over 3.5 million class members submitted claims). In contrast, over 150,981 Class Members have filed a claim. *See* Cowen Decl. ¶ 12. While Class Members still have time to present any objections or to opt out of the Class, the absence of objections, the limited number of opt outs, and the substantial number of claims thus far supports approval of the proposed

Settlement. To the extent any objections are filed, Plaintiffs and Class Counsel will address them in a filing to the Court in advance of the Fairness Hearing.

### 5.  Plaintiffs' Comprehensive Investigation and Informed Mediation Process Support Approving the Settlement at this Stage of the Litigation.

Courts consider the stage of the litigation during which a settlement is reached to assess "whether the discovery and other proceedings leading up to the proposed settlement agreement provided the parties with adequate information as to their respective litigation positions in order to act intelligently in negotiations." *Bezdek*, 79 F. Supp. 3d at 347.  This factor does not require an action to proceed to a particular stage before a settlement may be approved, but instead only requires the Court to find that Class Counsel had developed sufficient information by which to evaluate the settlement against plaintiffs' claims.  *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000).

As described in the Levis Declaration, Plaintiffs and Class Counsel had more than sufficient information by which to accurately assess the likelihood of success of Plaintiffs' claims and the fairness, reasonableness, and adequacy of the Settlement. Class Counsel investigated the circumstances of the Data Breach and conferred with individuals who were impacted by the Data Breach. Levis Decl. ¶ 17. They researched the possible claims available to impacted Class Members based on the facts known to date and initially brought claims for negligence, negligence *per se*, breach of implied contract, and unjust enrichment. *Id.* ¶ 18.  After further investigation and research, various state consumer protection laws were also added. *Id.* ¶ 21.  Upon reviewing Drizly's motion to compel arbitration, Class Counsel studied relevant case law on the enforceability of browse wrap agreements to assess the likelihood Drizly would prevail and developed a parallel strategy to continue pursuit of the claims through arbitration if Drizly's

motion was successful. *Id.* ¶¶ 23-25. Accordingly, even at this early stage of the litigation, Class Counsel had a solid understanding of the challenges involved with the cases.

That understanding was enhanced through the mediation process. Plaintiffs and Drizly engaged in a robust exchange of documents and information that informed Plaintiffs' positions on the strengths and weaknesses of Plaintiffs' claims and Drizly's defenses. *Id.* ¶ 29. Class Counsel reviewed documents and information Drizly produced as part of the mediation process in response to their specific requests. *Id.* ¶ 30. Further, the Parties, with the assistance of Judge Welsh, debated their differing viewpoints and reached the Settlement only after a full-day mediation session and subsequent settlement discussions. *Id.* ¶¶ 32-34.  By the time the Parties reached the Settlement, Plaintiffs and Class Counsel were well informed and confident that the proposed Settlement was in the best interest of the Class.

**6.  The Ability of the Defendants to Withstand a Greater Judgment Did Not Negatively Impact Settlement Negotiations.**

When evaluating settlements, courts in this Circuit weigh the proposed settlement against the "ability of the defendants to withstand a greater judgment." *Roberts*, 2016 WL 8677312, at *6, 8 (quoting *Grinnell*, 495 F.2d at 463). This factor is only relevant in cases where "the settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 314 (S.D.N.Y. 2020). Because the financial resources of the Defendants did not affect the results of the settlement negotiation, this factor does not weigh against approving the Settlement. *See id.*

For the foregoing reasons, the Settlement is in all respects fair, reasonable and adequate, and should be approved.

## II.    The Proposed Notice Program Satisfied Rule 23 and Due Process by Providing Class Members with Adequate Notice of Settlement.

Rule 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." FED. R. CIV. P. 23(e)(1)(B). In addition, "[f]or any class certified under Rule 23(b)(3) … the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). The Class Notice plan meets these requirements. *See generally* Cowen Decl. Given that the Data Breach concerned an online ordering system for which there was robust customer data, the Class Notice plan was designed to leverage this information—and the technological competence of Class Members using Drizly's service—to deliver notice directly to Class Members by email and targeted notifications placed within Drizly's platform. *Id*. ¶¶ 4-5. More than 2,357,030 emails containing settlement-related information were distributed to Class Members based on addresses obtained from Drizly's records. *Id.* ¶ 4. These email notices directed Class Members to the Settlement Website. *Id.* ¶¶ 4, 7. These email notices were supplemented by banner notifications posted on Drizly's website and mobile application, which also directed Class Members to the Settlement Website. *Id.* ¶ 5. After giving Class Members time to file claims following the initial round of notice, second wave of reminder emails was distributed between June 21 and June 27, 2021.  *Id.* ¶ 9. Courts have recognized that email notices and online publication of notice not only satisfy due process but are especially appropriate in cases where the class "consists of individual who access online content and have at least some familiarity with the Internet." *Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech.*, No. 3:15-cv-30024-KAR, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020) (finding email notice and a link of the notice on each entities' respective websites to be "the most reasonable manner to ensure that class members receive word of the settlement").

In addition to directing notice in a reasonable manner, the contents of the notice were sufficient, as they informed Class Members of the important aspects of the Settlement. *See* FED. R. CIV. P. 23(c)(2)(B). Class Members have been advised on the nature of the action, including the relevant claims, issues, and defenses. *See* Cowen Decl., Ex. D (Long Form Notice), Questions 4-6. Class Members have been afforded a full and fair opportunity to consider the proposed Settlement, file a claim, object to or exclude themselves from the Settlement, and to respond and/or appear in Court. *Id.* Questions 10-28, Further, the Class Notice fully advised Class Members of the binding effect of the judgment on them. *Id.* Questions 15-16. The email notice and the long form notice were written in clear and concise language, which reasonably conveyed the necessary information to the average class member. *See* Cowen Decl., Exs. A and D; *see also Hill v. State Street Corp.*, No. 09-12146-GAO, 2015 WL 127728, at *14 (D. Mass. Jan. 8, 2015) (notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

The Court should find that the Class Notice plan as implemented was reasonable and satisfied due process.

## III.    The Proposed Class Should be Certified for Final Approval of the Proposed Settlement.

On March 30, 2021, the Court preliminarily certified the Class for purposes of the proposed Settlement, finding that the Rule 23(a) and 23(b)(3) prerequisites were satisfied for settlement purposes. *See* Prelim. Approval Order, ECF No. 54 ¶ 4.  For the same reason as argued in the Prelim. Approval Mem. at 14-17, the Court should grant final certification of the Class for purposes of the Settlement.

Bolstering Plaintiffs' earlier arguments in support of certification of settlement class is the fact that the Settlement Administrator sent email notice to over 2,357,030 unique email addresses

identified from Drizly's records and that notifications of the Settlement displayed within Drizly's platform were seen by 371,381 people. *See* Cowen Decl. ¶¶ 4-5 (detailing the number of impressions on the Drizly platform). The size of the notice program further confirms that the numerosity requirement under Rule 23(a) is satisfied. *See McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 307 (D. Mass. 2004) (finding that a 51-person class was above the "critical mass of 40" members).

In the same vein, the size of the Class confirms that certifying a settlement class is a superior option for resolving this Action. *Saunders v. Getchell Agency, Inc.*, No. 1:13-cv-00244, 2015 WL 1292594, at *8 (D. Me. Mar. 23, 2015) ("Without a more compelling showing that a class action will pose discrete difficulties, there is no sound basis to conclude that a multitude of individual lawsuits against [the defendant] would be a superior process to a single class action of relatively modest size."). It is worth noting that despite the size of the class, aside from the Plaintiffs named here, no other Class Member has commenced an individual action. *See Henderson v. Bank of N.Y. Mellon, N.A.*, 332 F. Supp. 3d 419, 430 (D. Mass. 2018) (superiority satisfied where "class treatment can vindicate the claims of groups of people whose individual claims would be too small to warrant litigation"); *accord In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 56 (D. Mass. 2010) ("In this case, involving millions of potential plaintiffs with small individual claims, a class action is the only feasible mechanism for resolving the dispute effectively."). Therefore, Plaintiffs' request that the Action finally be certified as a class action, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Final Approval Order and Final Judgment, filed herewith (i) granting Final Approval of the

Settlement; (ii) finally certifying the Settlement Class; and (iii) providing other such relief required

to effectuate the Settlement.

Dated:  July 13, 2021                              Respectfully submitted,

                                                   */s/ Jason M. Leviton*
                                                   Jason M. Leviton (BBO #678331)
                                                   Jacob A. Walker (BBO #688074)
                                                   **BLOCK & LEVITON LLP**
                                                   260 Franklin Street, Suite 1860
                                                   Boston, MA 02110
                                                   Tel: (617) 398-5600
                                                   jason@blockleviton.com
                                                   jake@blockleviton.com

                                                   Christian Levis (admitted *pro hac vice*)
                                                   Amanda Fiorilla (admitted *pro hac vice*)
                                                   **LOWEY DANNENBERG, P.C.**
                                                   44 South Broadway, Suite 1100
                                                   White Plains, NY 10601
                                                   Tel: (914) 997-0500
                                                   Fax: (914) 997-0035
                                                   clevis@lowey.com
                                                   afiorilla@lowey.com

                                                   Anthony M. Christina (admitted *pro hac vice*)
                                                   **LOWEY DANNENBERG, P.C.**
                                                   One Tower Bridge
                                                   100 Front Street, Suite 520
                                                   West Conshohocken, PA 19428
                                                   Tel: (215) 399-4770
                                                   Fax: (914) 997-0035
                                                   achristina@lowey.com

                                                   Gary F. Lynch (admitted *pro hac vice*)
                                                   Jamisen A. Etzel (admitted *pro hac vice*)
                                                   **CARLSON LYNCH, LLP**
                                                   1133 Penn Avenue, 5th Floor
                                                   Pittsburgh, PA 15222
                                                   Tel: (412) 322-9243
                                                   Fax: (412) 231-0246
                                                   glynch@carlsonlynch.com
                                                   jetzel@carlsonlynch.com

                                                   Warren D. Postman (admitted *pro hac vice*)

Jason Ethridge (admitted *pro hac vice*)
**KELLER LENKNER LLC**
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
Tel: (202) 918-1123
wdp@kellerlenkner.com
jason.ethridge@kellerlenkner.com

Russell S. Thompson, IV (admitted *pro hac vice*)
**THOMPSON CONSUMER LAW GROUP, PC**
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Tel: (602) 388-8898
Fax: (866) 317-2674
rthompson@consumerlawinfo.com

*Class Counsel*