UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES BARR, MARY BIRDOES, JEFF BOWLIN, and RYAN LANDIS, on behalf of themselves all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DRIZLY, LLC f/k/a DRIZLY, INC., and THE DRIZLY GROUP, INC.,<br><br>Defendants. | Case No. 1:20-CV-11492<br><br>The Honorable Leo T. Sorokin<br>Magistrate Judge Donald L. Cabell |

**DECLARATION OF CHRISTIAN LEVIS IN SUPPORT OF
(A) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS ACTION
SETTLEMENT; AND (B) CLASS COUNSEL'S MOTION FOR ATTORNEYS'
FEES AND EXPENSES, AND PLAINTIFFS' APPLICATION FOR AN
INCENTIVE AWARD**

I, Christian Levis, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a Partner with the law firm of Lowey Dannenberg, P.C. ("Lowey").

2. I respectfully submit this Declaration in support of: (a) Plaintiffs' Motion for Final Approval of the Class Action Settlement with Drizly, LLC f/k/a Drizly, Inc. and The Drizly Group, Inc. (collectively "Drizly") (the "Final Approval Mot."); and (b) Class Counsel's Motion for Attorneys' Fees and Expenses, and Plaintiffs' Application for an Incentive Award (the "Fee and Expense Application").

3. By Order dated March 30, 2021 preliminarily approving the Settlement, the Court appointed Lowey, along with Carlson Lynch, LLP ("Carlson Lynch"), Keller Lenkner LLC ("Keller Lenkner"), Thompson Consumer Law Group, PC ("TCLG"), and Block & Leviton LLP ("Block & Leviton") as Class Counsel for the Settlement Class. ECF No. 54.

4. I have been actively involved in prosecuting and resolving this Action on behalf of Lowey, am familiar with its proceedings, and have personal knowledge of the matters set forth herein. If called upon and sworn as a witness, I am able to competently testify thereto.

5. Unless otherwise defined herein, all capitalized terms have the same meanings ascribed to them in the Stipulation and Agreement of Settlement with Drizly, dated March 26, 2021 (the "Settlement Agreement"), attached as Exhibit 1 to the Declaration of Christian Levis, dated March 29, 2021, ECF No. 52-4.

I. INTRODUCTION

6. The Settlement is valued at between $3,350,000 and $7,105,750 (Settlement Agreement § 1(MM)) and, if approved, would fully resolve the Action. In addition to providing relief to the Settlement Class now, the Settlement avoids the substantial risk, expense, and delay of taking this Action to trial, including the risk that the Settlement Class would recover less at

trial, or nothing at all, after additional years of litigation. The Settlement Class also avoids the risk and expense of having to arbitrate these claims individually if Drizly's Motion to Compel Arbitration (ECF Nos. 36-39) had been successful, a risk that, if it realized, may have prevented some Class Members from pursuing their claims.

7. The Settlement also involves injunctive relief in the form of enhanced security measures that Drizly is to implement over a two-year period. *See* Settlement Agreement § 4. Among other measures, the Settlement requires Drizly to purchase tools to monitor and identify potentially suspicious activity on Drizly's servers, hire a third-party cybersecurity firm to test the integrity of Drizly's security measures, and designate executive personnel who will be responsible for overseeing Drizly's data security, among other requirements.

8. The Settlement was the product of arm's length negotiations among experienced counsel and involved mediation with the Honorable Diane M. Welsh (Ret.), U.S.M.J. (E.D. Pa.) of JAMS. *See* ¶¶ 29-34, *infra*; *see also* the July 13, 2021 Declaration of Hon. Diane M. Welsh (Ret.) in Support of Plaintiffs' Motion for Final Approval of the Class Action Settlement, attached herewith. Both Plaintiffs and Class Counsel had a thorough understanding of the strengths and weaknesses of the claims asserted in the Action at the time they reached the Settlement.

9. For each of these reasons, and those set forth below, we believe that the Settlement constitutes an excellent result for the Settlement Class in light of the substantial litigation risks, and that it should be approved.

10. As to the Fee and Expense Application, the Class Notice informed the Settlement Class that Class Counsel would apply for an award of attorneys' fees and litigation expenses of

no more than $1,200,000. The Class Notice also advised the Class that the named Plaintiffs may seek an Incentive Award, limited to $2,000 per named Plaintiff, for a total of $8,000.

11. Consistent with the Class Notice, Class Counsel move for an award of $1,186,967.05 as attorneys' fees and $13,032.95 for payment of expenses they incurred in prosecuting the Action, which represents a multiplier of 1.77 of Class Counsel's lodestar as of April 30, 2021, which totals $670,199. Unless otherwise stated, this Declaration focuses on the time period of July 28, 2020 (case inception) through April 30, 2021.

12. Class Counsel believes the requested attorneys' fee award sought in the Fee and Expense Application is reasonable based on Class Counsel's efforts, the risk they undertook, and the results they achieved. The requested payment for litigation expenses should similarly be approved because the expenses were reasonably and necessarily incurred in the prosecution of the Action.

13. Further, the requested Incentive Award is appropriate and reasonable in light of Plaintiffs' efforts in the Action and is consistent with precedent within this Circuit and in other consumer data breach cases.

14. This Declaration is organized as follows: (a) Section II provides an overview of Class Counsel's efforts to investigate the Data Breach, develop Plaintiffs' complaints, consolidate litigation in the District of Massachusetts, and prepare Plaintiffs' response to Defendants' Motion to Compel Arbitration; (b) Section III sets forth the details concerning the negotiation and mediation processes that led to the Settlement; (c) Section IV details Plaintiffs' efforts in the Action; and (d) Section V sets forth Class Counsel's total hours invested in prosecuting the Action along with the related lodestar, and the litigation expenses incurred in furtherance of the Action.

## II. CASE DEVELOPMENT, INITIAL PLEADINGS, AND MOTION TO COMPEL ARBITRATION

### A. Initial Case Investigation

15. Drizly is an online marketplace that connects users with local retailers of beer, wine, and liquor in North America.

16. On or about July 28, 2020, Drizly notified users by email that it had identified suspicious activity involving customer data. The July 28, 2020 notice stated that an investigation had found that an unauthorized third party obtained some of Drizly's users' personal information, including email address, date of birth, hashed passwords, and in rare cases delivery addresses (the "Data Breach"). A news report by technology industry news source *TechCrunch*, followed that same day describing the Data Breach.

17. Following this news, Lowey and Carlson Lynch began investigating the data breach by researching the factual circumstances surrounding the Data Breach as well as the potential legal claims involving Drizly. TCLG also launched their own independent investigation into the Data Breach. Lowey and Carlson Lynch reached out to Block & Leviton for the purposes of retaining liaison counsel. In the days following the Data Breach, Lowey, Carlson Lynch, and TCLG collectively spoke to several individuals who believed they were affected by the Data Breach.

### B. Pleadings Development and Motion Practice

18. As a result of their investigation, Lowey, Carlson Lynch, and Block & Leviton on behalf of Plaintiff James Barr ("Barr"), a Drizly user, filed the first complaint against Drizly on August 7, 2020 in the U.S. District Court for the District of Massachusetts. *See Barr v. Drizly, LLC*, Case No. 1:20-cv-11492-LTS (D. Mass.). Complaint, ECF No. 1. In this initial complaint, Plaintiff Barr alleged that Drizly violated the common law by failing to use reasonable security

4

measures to protect his personal information, along with that of other similarly situated Class Members that used Drizly's service. Plaintiff Barr brought claims for negligence, negligence *per se*, breach of implied contract, and unjust enrichment. ECF No. 1.

19. Shortly thereafter and following their own investigation, on August 20, 2020, TCLG on behalf of Plaintiffs Mary Birdoes and Jeff Bowlin (the "*Birdoes* Plaintiffs") filed a lawsuit against Drizly in the U.S. District Court for the District of Arizona asserting similar claims as Plaintiff Barr, arising from the same Data Breach. *See Birdoes v. Drizly, LLC*, Case No. 2:20-cv-01639-GMS (D. Ariz.) ("*Birdoes*"), Complaint, ECF No. 1. Plaintiff Birdoes and Bowlin brought claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and the Arizona Consumer Fraud Act. *Id*.

20. Counsel for Plaintiff Barr (Lowey, Carlson Lynch, and Block & Leviton), the *Birdoes* Plaintiffs (TCLG), and Drizly, subsequently met-and-conferred and agreed that it would serve the interest of judicial efficiency, avoid unnecessary costs and duplication of effort, among other things, if the claims asserted by against Drizly by the *Birdoes* Plaintiffs were to proceed before this Court along with those of Plaintiff Barr.

21. The First Amended Class Action Complaint ("FAC") was filed on October 28, 2020. ECF No. 35. The FAC incorporated Plaintiff Barr's claims, along with those of the *Birdoes* Plaintiffs, and also added Plaintiff Ryan Landis (collectively the "Plaintiffs"). The FAC reflects the additional investigative efforts of Lowey, Carlson Lynch, and TCLG after the filing of the initial *Barr* and *Birdoes* complaints, including the addition of statutory state law claims under California, New York, and Massachusetts law and the addition of a new California Plaintiff, Mr. Landis. Specifically, in addition to common law claims of negligence, negligence *per se*, breach of implied contract, and unjust enrichment, the FAC alleged that Drizly had violated various

state consumer protection laws—including the Massachusetts Consumer Protection Act, New York General Business Law, Arizona Consumer Fraud Act, California Unfair Competition Law, California Civil Remedies Act, and the California Consumer Privacy Act—by failing to use reasonable security measures to protect Plaintiffs' and similarly situated Class Members' personal information. FAC, ECF No. 35, at ¶¶ 112-229.

22.  The *Birdoes* Plaintiffs voluntarily dismissed their action in the District of Arizona on November 17, 2020. *Birdoes*, ECF No. 6.

23.  On November 18, 2020, Drizly filed a Motion to Compel Arbitration. ECF Nos. 36-39. In this motion, Drizly argued, among other things, that Plaintiffs should be compelled to arbitration because the terms of service they agreed to when creating their Drizly accounts contained an arbitration provision and class action waiver.

24.  Immediately following Drizly's Motion to Compel Arbitration, Lowey, Carlson Lynch, TCLG, and Block & Leviton began researching and drafting arguments in response to Drizly's motion.

25.  While Lowey, Carlson Lynch, TCLG, and Block & Leviton worked on drafting their opposition to Drizly's Motion to Compel Arbitration, they made the strategic decision to partner with Keller Lenker, a firm with significant experience handling complex, mass arbitrations involving thousands of parties, ensuring the best chance for success in the event Drizly's motion was granted.  Keller Lenkner appeared in the case on behalf of Plaintiffs on November 24, 2020. ECF No. 40.

### III.   DRIZLY SETTLEMENT NEGOTIATIONS

26.  After Drizly filed its Motion to Compel Arbitration, the Parties began discussing the potential for a resolution to Action. The Parties met-and-conferred about the potential to

explore a resolution of the Action. To facilitate these discussions, the Parties entered a stipulation on December 7, 2021 that extended Plaintiffs' time to respond to Drizly's Motion to Compel by sixty (60) days to February 8, 2021. ECF No. 43. The Court entered this stipulation, modifying the briefing schedule as agreed by the Parties, on December 8, 2021. ECF No. 44. Following initial discussions, in early December 2020, the Parties decided they would attempt to formally mediate their dispute.

27. Throughout December 2020 through January 2021, Class Counsel engaged in extensive settlement negotiations with Drizly. During these negotiations, the Parties exchanged views on the risks of the case, the likely damages, and potential terms for a settlement. Class Counsel presented what they perceived to be the strengths and weaknesses of the claims and defenses, as well as Drizly's litigation exposure in both a federal court proceeding and arbitration.

28. After some initial discussion, the Parties agreed that it would be productive to continue discusses with the aid of a mediator. The Parties each proposed several potential mediators, ultimately agreeing on the selection of the Honorable Diane M. Welsh (Ret.), U.S.M.J. (E.D. Pa.) of JAMS. Judge Welsh is a skilled mediator with significant class action experience, including several recent data breach cases. *See, e.g., In re Wawa, Inc. Data Security Litigation*, Case No. 2:19-cv-06019-GEKP (E.D. Pa.); *First Choice Federal Credit Union v. The Wendy's Company, et al.*, No. 16-cv-00506 (W.D. Pa.).

29. In preparation for the mediation, the Parties entered a mutual confidentiality and non-disclosure agreement to facilitate the exchange of information regarding Plaintiffs' claims and Drizly's potential defenses. Pursuant to this agreement, the Parties produced documents and information responsive to requests for information on December 30, 2020.

30. Class Counsel was directly involved in the document collection and review process in response to Drizly's information request. This included overseeing a diligent search and review of each potentially relevant communications and records from each Plaintiff.

31. Class Counsel also estimated the potential damages that could be recovered if the case had proceeded to trial, which they used to inform their settlement negotiations. At a minimum, Class Counsel determined that Drizly could be subject to statutory damages of $25 per Class Member under the Massachusetts Consumer Protection Act. *See* Mass. Gen. Laws Ann. ch. 93A, § 9(3) ("recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater"). Based on the estimated class size of 2.5 million Drizly customers, the potential damages at trial could have exceeded $62,500,000.

32. At Judge Welsh's request, the Parties each prepared detailed mediation statements addressing the strengths and weaknesses of their respective positions. The Parties exchanged their respective confidential mediation statements with each other and Judge Welsh on January 11, 2021.

33. On Friday, January 15, 2021, Judge Welsh held an all-day, virtual mediation with the Parties via Zoom. This mediation included a robust, arms-length discussion of the Parties' respective litigation positions, the strengths and weakness of Plaintiffs' claims and Drizly's defenses, the risks associated with continue litigation or arbitration, Plaintiffs' damages analysis and Drizly's potential exposure in the Action.

34. After more than twelve hours of intense negotiations, the Parties reached an impasse and ended settlement negotiations for the evening. Aided by Judge Welsh, negotiations continued throughout the weekend into Monday, January 18, 2021. The Parties finally reached an agreement in principle on the proposed Settlement on January 19, 2021.

35. Plaintiffs and Drizly executed a binding Settlement Term Sheet ("Term Sheet") on January 22, 2021. The Term Sheet set forth the material terms on which the Parties agreed to settle Plaintiffs' claims against Drizly, subject to the negotiation of a full Settlement Agreement.

36. On January 25, 2021, Plaintiffs and Drizly filed a Notice of Settlement to inform the Court of the agreement in principle to resolve this Action and requested a stay of the case until February 25, 2021, while the Parties negotiated the terms of the Settlement Agreement. ECF No. 47. The Court entered an order on the Notice of Settlement on January 26, 2021. ECF No. 48.

37. The Parties later jointly sought, and the Court granted, an extension of the stay until March 29, 2021, to provide the Parties time to finalize the Settlement Agreement and file their motion for Preliminary Approval of the Settlement under FED. R. CIV. P. 23. ECF Nos. 49-51.

38. Between January 25, 2021 and March 26, 2021, the Parties drafted and revised the Settlement Agreement and its various key provisions. Numerous issues were contested, negotiated, and resolved. The Parties formally executed the Settlement Agreement on March 26, 2021. Under the Settlement, Settling Class Members will receive a portion of the Settlement Cash Payment[1] (which will total between $1,050,000 and $3,150,000) and the Settlement Service Credit Amount[2] (of up to $447,750) depending on the number of Settling Class Members who file claims.  As not every Class Member will participate in the Settlement, those Settling Class Members that do submit a claim will likely receive a higher percentage of what would have been available under statutory damages.  On an individual basis, a Settling Class Member may recover up $14 of the Settlement Cash Payment and $1.99 from the Settlement Service Credit Amount

---

[1] *See* Settlement Agreement § 1(KK).
[2] *See id.* at § 1(LL).

for a total of $15.99 or 64% of what they could have received under the Massachusetts Consumer Protection Act's $25 statutory damages. On a class-wide basis if the total Settlement Value[3] is considered, which includes the Settlement Cash Payment, Settlement Service Credit Amount, the injunctive relief value, attorneys' fees and expense award payments, and the Incentive Award, the recovery would represent between 5.36% and 11.37% of Drizly's potential statutory liability under the Massachusetts Consumer Protection Act.

39. Plaintiffs and Class Counsel were well-informed regarding the strengths and weaknesses of Plaintiffs' claims before reaching the Settlement. At all times while negotiating and executing the Term Sheet and Settlement Agreement with Drizly, Class Counsel, including my firm and I, were experienced in prosecuting class action cases, including those involving data breach and consumer privacy claims. Prior to reaching the Settlement, Plaintiffs also had the benefit of documents and information exchanged during the mediation process that developed from Class Counsel's investigations and analysis.

40. Negotiations leading to the Settlement were entirely non-collusive and strictly conducted at arm's length. During the course of negotiations, Class Counsel had the benefit of developing information from various sources, including public information surrounding the Data Breach, contemporary news reports, Class Counsel's own investigation into the Settlement Class' claims, and documents and information produced by Drizly as part of the mediation process. Class Counsel were involved in all aspects of the settlement negotiations on behalf of Plaintiffs and were well informed about the legal risks, factual uncertainties, potential damages, and other aspects of the strengths and weaknesses of the claims against Drizly. The Settlement involves a structure and terms that are common in data breach class actions and have been

---

[3] *See id.* at § 1(MM).

approved in this District, including a provision that provides Drizly with a qualified right to terminate the Settlement in the event that the number of Settlement Class Members who timely exercise their right to request exclusion from the Settlement Class exceeds a certain percentage. The consideration that Drizly agreed to pay is within the range of that which may be found to be fair, reasonable, and adequate at final approval.

41. Class Counsel has strong reason to believe, based on public statements about the scope of the Data Breach and information from Drizly, that there are millions of geographically dispersed persons and entities that fall within the Settlement Class definition.

42. On March 29, 2021, Plaintiffs filed a Motion for Preliminary Approval of the Proposed Class Action Settlement, a 20-page Memorandum in support, a Declaration by Christian Levis with ten exhibits, including Class Counsel's resumes, and a [Proposed] Order. ECF No. 52, *et seq.*

43. On March 30, 2021, the Court preliminarily approved the Settlement as set forth in the Settlement Agreement, as being within the range of what may be found to be fair, reasonable, and adequate to the Settlement Class for the claims against Drizly. ECF No. 54. The Court preliminarily certified the following Settlement Class (*id.* at ¶ 4):

> All persons residing in the United States whose customer data was compromised in the data intrusion security incident that Drizly made public on July 28, 2020, in which an unauthorized party accessed certain personally identifiable information of Drizly's customers (the "Data Breach").

44. That same day, the Court also approved the Class Notice plan. ECF No. 54. at ¶ 17.

45. On April 13, 2021, the Court issued an electronic order scheduling a Fairness Hearing for October 26, 2021, at 2:30 p.m. eastern via remote proceeding before The Honorable Leo T. Sorokin, U.S.D.J. ECF No. 55.

46. Class Notice has been issued, and to date, there have been thirty-seven requests for exclusion and there are zero objections. A total of 150,981 claims have been filed so far.

## IV. PLAINTIFFS' EFFORTS ON BEHALF OF THE CLASS

47. Had Drizly's Motion to Compel Arbitration been successful, Plaintiffs would have been forced to litigate their claims individually. However, even if Drizly succeeded in its Motion to Compel Arbitration, Class Counsel expected that they would have been retained by tens of thousands of Drizly customers. Those customers' claims, when pursued in individual arbitrations, would have imposed as much, or more, legal exposure on Drizly than would a class action. That exposure reflects both the underlying liability described above, as well as the substantial costs to Drizly of defending against tens of thousands of individual arbitrations.

48. Plaintiffs protected the interests of Class Members by taking actions that resulted in a substantial benefit to the Settlement Class. Plaintiffs have been in direct contact with Class Counsel throughout the case and have been involved in reviewing relevant pleadings and filings, collecting documents, and consulting with Class Counsel regarding settlement negotiations.

49. Specifically, Plaintiffs assisted Class Counsel in their pre-suit investigation, and spent considerable time searching, collecting, and providing documents and information crucial to establishing Plaintiffs' claims at mediation.

50. Plaintiffs were aware of the various risks involved in this case yet commenced this Action anyway. Plaintiffs undertook substantial direct and indirect risk as they agreed to bring this public action in their name, to be deposed if necessary, and to testify if there was a trial. But for Plaintiffs' efforts, and their desire and willingness to stick with this case, with the

potential risk of having to individually arbitrate, the Settlement Class would have likely received nothing, as no other litigation was commenced and no other mass arbitrations commenced.

### V.      CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES

51.    As Class Counsel's firm résumés (*see* ECF Nos. 52-9 – 52-13) demonstrate, Class Counsel are skilled and accomplished litigators in the complex litigation, arbitration, class action, and data breach and data privacy litigation fields with successful track records in some of the largest class actions throughout the country.

52.    Class Counsel worked cooperatively to avoid duplication: for example, Lowey acted as *de facto* lead counsel, serving as the point firm for contact with Defendant, prepared initial drafts of pleadings and briefs, and coordinated case strategy and delegated assignments and distributed drafts amongst the other Class Counsel firms of Carlson Lynch, TCLG, and Keller Lenkner, based on skill, experience, and availability; Block & Leviton served as liaison counsel, advising on Massachusetts law, fielding inquiries from potential plaintiffs who reached out to their office, and reviewing and editing filings for compliance with the District's Local Rules and subsequent ECF filing. Class Counsel coordinated work regularly and all were included on relevant correspondences with Drizly and kept apprised of important developments.

53.    Class Counsel bore the risk of litigating and funding this Action entirely on a contingent basis. There are numerous contingency fee cases in which counsel have contributed hundreds hours of service to the class' claims and advanced substantial sums of money, only to receive no compensation for their work.

54.    Notwithstanding, Class Counsel devoted substantial attorney time and resources to the prosecution of the Action. The expenditure of these hours and other litigation costs were reasonably necessary to effectively litigate the Action and are further evidence of Class

Counsel's commitment. Summaries of the expenses by category can be found in Class Counsel's separate individual declarations in support of the Fee and Expense Application.

55. Class Counsel devoted appropriate staff time and resources towards this Action for the benefit of the Settlement Class. As described in the accompanying individual firms declarations of Class Counsel in support of the Fee and Expense Application, the firms contributed information resulting from their initial investigations into the alleged misconduct, prepared the initial (*Barr* and *Birdoes*) complaints and amended complaints in this Action, researched and prepared responses to Drizly's Motion to Compel Arbitration, interviewed potential plaintiffs who contacted Class Counsel during the litigation, interfaced with Plaintiffs, prepared for and participated in the mediation, and collaborated on the drafting of the Settlement Agreement. Class Counsel also advanced reasonable expenses in this Action.

56. The following chart summarizes the aggregate hours and lodestar of Class Counsel, as set forth in more detail in the separate firm declarations.

| Firm Name | Hours | Lodestar |
|---|---:|---:|
| Lowey | 891.00 | $493,516.50 |
| Carlson Lynch | 44.00 | $32,392.50 |
| Keller Lenkner | 74.10 | $46,407.50 |
| TCLG | 125.50 | $88,230.00 |
| Block & Leviton | 15.00 | $9,652.50 |
| | | |
| Total: | 1,149.60 | $670,199.00 |

57. The expenses of each firm, combined, were as follows

| Expense Category | Amount |
|---|---:|
| Mediation | $8,483.00 |
| Computer Research | $2,341.54 |
| Photocopies - In House | $0.80 |
| Photocopies - External | $353.00 |
| Court Costs | $1,700.00 |
| Service of Process | $130.00 |
| Postage | $24.61 |
| | |
| Total: | $13,032.95 |

## VI. CONCLUSION

58. For the reasons set forth above and in the accompanying memoranda of law, I respectfully submit that: (i) the terms of the Settlement are fair, reasonable, and adequate in all respects and should be approved; and (ii) the Fee and Expense Application is reasonable, supported by the facts and law, and should be granted.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 13, 2021            /s/ Christian Levis
White Plains, New York                  Christian Levis