# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JAMES BARR, MARY BIRDOES, JEFF
BOWLIN, and RYAN LANDIS, on behalf of
themselves all other persons similarly situated,

                        Plaintiffs,

        vs.

DRIZLY, LLC f/k/a DRIZLY, INC., and
THE DRIZLY GROUP, INC.,

                        Defendants.

**Case No. 1:20-CV-11492**

**The Honorable Leo T. Sorokin**
**Magistrate Judge Donald L. Cabell**

## MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES, AND PLAINTIFFS' APPLICATION FOR AN INCENTIVE AWARD

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT .................................................................................................................3

    I.      The Requested Attorneys' Fee Award is Fair and Reasonable ................................3

        A.    The Lodestar Method is the Appropriate Means by which to Award Attorneys'
              Fees for this Settlement ....................................................................................4

        B.    Class Counsel's Lodestar is Reasonable ..........................................................5

        C.    The Relevant Factors Considered by Courts in this Circuit Support Awarding a
              Multiplier on Class Counsel's Lodestar ...........................................................8

            1.    The Extent of The Benefit Obtained Supports the Requested Award ...............9

            2.    The Complexity of the Litigation Favors the Fee Award ............................11

            3.    The Contingency and Litigation Risk Justify the Application of a Lodestar
               Multiplier ........................................................................................................13

            4.    Amount of Time Devoted to the Case by Counsel ........................................14

            5.    The Reaction Of The Class Members ...........................................................15

            6.    Attorneys' Skill and Efficiency ....................................................................15

            7.    The Importance of the Litigation Favors the Award ......................................17

            8.    Other Fee Awards in Similarly Complex Actions Further Support the
               Reasonableness of Class Counsel's Fee Request ...........................................18

    II.    Class Counsel Should be Reimbursed for Their Reasonably Incurred Litigation
        Expenses ...............................................................................................................19

    III.    Plaintiffs' Request for an Incentive Award Should be Granted ...........................19

CONCLUSION ............................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Facebook, Inc.*,
No. 18-05982 WHA, 2021 WL 1817047 (N.D. Cal. May 6, 2021) ...........................................9

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ...........................................................................................14

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015) .................................................................3, 4, 15, 18, 19

*Bussie v. Allamerica Fin. Corp.*,
No. CIV.A. 97-40204-NMG, 1999 WL 342042 (D. Mass. May 19, 1999) ............................20

*Countin v. Young & Rubican Puerto Rico, Inc.*,
124 F.3d 331 (1st Cir. 1997) ....................................................................................................8

*Daly v. Met. Life Ins. Co.*,
782 N.Y.S.2d 530 (N.Y. Sup. Ct. 2004) ................................................................................17

*Giorgio v. Duxbury*,
No. 12-11171-LTS, 2016 WL 3983232 (D. Mass July 25, 2016) .............................................6

*Grendel's Den, Inc. v. Larkin*,
749 F.2d 945 (1st Cir. 1984) ....................................................................................................5

*Hill v. State Street Corp.*,
No. 09-12146-GAO, 2015 WL 127728 (D. Mass Jan. 8, 2015) ................................................8

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) ................................................................................................14

*In re Daily Fantasy Sports Litig.*,
No. 16-md-02677-GAO, 2019 WL 6337762 (D. Mass. Nov. 27, 2019) ...........................11, 13

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
No. 17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ......................................10

*In re Puerto Rico Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011) ..................................................................................15, 17

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) ..........................................................................................18, 20

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ........................................13

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
 56 F.3d 295 (1st Cir. 1995) ................................................................................................3

*In re TJX Cos. Retail Sec. Breach Litig.*,
 584 F. Supp. 2d 395 (D. Mass. 2008) .................................................................3, 4, 8, 13, 18

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
 535 F. Supp. 2d 249 (D.N.H. 2007) ...................................................................................18

*In re Volkswagen & Audi Warranty Extension Litig.*,
 692 F. 3d 4 (1st Cir. 2012) ...............................................................................................4

*In re Volkswagen & Audi Warranty Extension Litig.*,
 89 F. Supp. 3d 155 (D. Mass. 2015) .................................................................................4, 5

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
 No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ..................................14

*Iverson v. Braintree Prop. Assocs., L.P.*,
 No. 04-cv-12079-NG, 2008 WL 552652 (D. Mass. Feb. 26, 2008) ...........................................8

*Krausz v. ING Investments, LLC*,
 No. 06-12145, 2008 WL 217102 (D. Mass. Jan 23, 2008) ......................................................18

*Lucas v. Kmart Corp.*,
 No. 99-cv-01923-JLK-CBS, 2006 WL 2729260 (D. Colo July 27, 2006) ................................7

*Maley v. Del Global Techs. Corp.*,
 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................................15

*Mazola v. May Dep't Stores Co.*,
 No. 97-cv-10872-NG, 1999 WL 1261312 (D. Mass. Jan. 27, 1999) .......................................17

*Medoff v. CVS Caremark Corp.*,
 No. 09-cv-554-JNL, 2016 WL 632238 (D.R.I. Feb 17, 2016) ...............................................18

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
 No. 05-11148-PBS, 2009 WL 2408560 (D. Mass Aug. 3, 2009) ............................................18

*Spruill v. Alexander*,
 No. 09-292S, 2011 WL 2413837 (D.R.I. Mar. 31, 2011) ........................................................7

*Theodore v. Uber Tech., Inc.*,
 442 F. Supp. 3d 433 (D. Mass. 2020) ............................................................................11, 13

*Weinberger v. Great Northern Nekoosa Corp.*,
 925 F.2d 518 (1st Cir. 1991) ..............................................................................................4

*Williams v. Poulous*,
   Nos. 94-2057, 94-2058, 1995 WL 281451 (1st Cir. May 12, 1995) ...........................................6

## **Other Authorities**

Fed. Trade Comm'n, CONSUMERS AND CLASS ACTIONS: A RETROSPECTIVE AND ANALYSIS OF
   SETTLEMENT CAMPAIGNS 11 (2019) ......................................................................................10

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.612 (2004) ..................................................15

Class Counsel[1] respectfully submit this memorandum of law in support of their motion seeking an attorneys' fee award of $1,186,967.05 and $13,032.95 as payment for their litigation expenses. Plaintiffs[2] also seek a combined Incentive Award of $8,000 to be divided equally among them as compensation for the service that Plaintiffs provided to the Class and the risks they undertook as class representatives (collectively the "Fee and Expense Application").

## PRELIMINARY STATEMENT

This Action was brought on behalf of all Persons in the United States whose customer data was compromised in the Data Breach that Defendants Drizly, LLC and The Drizly Group, Inc. (collectively "Drizly") made public on July 28, 2020. As described more fully in the accompanying Declaration of Christian Levis in Support of (A) Plaintiffs' Motion for Final Approval of the Class Action Settlement; and (B) Class Counsel's Motion for Attorneys' Fees and Expenses, and Plaintiffs' Application for an Incentive Award (the "Levis Declaration" or "Levis Decl.") and the Memorandum of Law in Support of Final Approval of the Class Action Settlement ("Final Approval Mem."), Class Counsel marshalled its resources and effectively prosecuted the case, leading to a Settlement (valued at between $3,350,000 and $7,105,750) that provides real, tangible benefits to the Class of approximately 2.5 million Drizly customers. The Settlement Cash Payment, which will be at least $1,050,000 and as much as $3,150,000, and the Settlement Service Credit Amount of up to $447,750 will be distributed to eligible Class Members without requiring proof of loss or proof of purchase.[3] The $2,300,000 in security enhancements undertaken by Drizly will

---

[1] "Class Counsel" are (1) Lowey Dannenberg, P.C., (2) Carlson Lynch, LLP, (3) Keller Lenkner LLC, (4) Thompson Consumer Law Group, PC, and (5) Block & Leviton LLP.

[2] Unless otherwise defined herein, capitalized terms have the same meaning as in the Stipulation and Agreement of Settlement ("Settlement Agreement"). ECF No. 52-4. Unless otherwise indicated, internal citations and quotation marks are omitted and ECF citations are to the docket.

[3] Class Members need not submit proof of purchase because their status as Class Members are verified through Drizly's records.

strengthen the protections that safeguard Class Members' customer data and prevent a reoccurrence of a similar data intrusion.

Class Counsel's recovery is significant in light of the risks involved in litigating this Action. Had the case gone forward, Drizly would have fiercely contested any number of legal and factual issues relating to standing, causation, liability and damages, as well as class certification. These risks are compounded by the fact that data breach litigation is a relatively novel area of law. The most immediate risk of a potential adverse ruling involved Drizly's motion to compel arbitration, which was pending when the Parties reached this Settlement.

Despite these risks, Class Counsel—who proceeded on a contingent fee basis and, collectively, brought their decades of experience to bear to litigate this case—secured substantial benefits on behalf of the Class. After the Parties reached agreement on Drizly's payments to eligible Class Members and injunctive relief, Drizly also agreed to pay up to $1,200,000 in attorneys' fees and expenses and up to $8,000 in incentive awards for the named Plaintiffs, terms Class Counsel separately negotiated to ensure that the Class' recovery would not be diminished.

Consistent with this Court's March 30, 2021 Order, Class Notice commenced on April 27, 2021. The Settlement Administrator, A.B. Data, Ltd., emailed Class Notice to 2,357,030 unique email addresses of Class Members, and Drizly's platform directed Class Members to the Settlement website: alcoholdeliverydatabreach.com. *See* July 13, 2021 Declaration of Mark Cowen Regarding Notice and Administration ("Cowen Decl.") ¶¶ 4-5, 7, filed with Plaintiff's Final Approval Motion. While the opt out, objection, and claims filing deadlines have not yet occurred, not a single Class Member has objected, only thirty-seven potential Class Members have opted out from the Settlement, and more than 150,981 claims have been filed to date. *Id.* ¶¶ 10-12.

In light of the above, and as described below, Class Counsel's Fee and Expense Application

is reasonable. The proposed attorneys' fee award is consistent with the agreed-upon amount provided in the Settlement Agreement.[4]  The attorneys' fee request reflects a reasonable multiplier on Class Counsel's lodestar and is similar to awards in other data breach class actions and in other class settlements in this District. The expenses for which Lead Counsel seeks payment were reasonably incurred to achieve this excellent result for the Class and should be paid. Finally, Plaintiffs devoted significant time and effort to this litigation, at substantial personal risk, and an Incentive Award of $8,000 to be shared equally among them, consistent the Settlement Agreement is also appropriate.[5]

## ARGUMENT[6]

### I.    The Requested Attorneys' Fee Award is Fair and Reasonable

In class action litigation, attorneys whose work results in a common benefit for class members are entitled to fair and reasonable fees for their work. *See, e.g., In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass. 2015) ("Attorneys in a certified class action may be awarded reasonable fees and costs."). A court evaluates a class action fee request to ensure it is appropriate, even in circumstances where a settlement agreement provides that a settling defendant will pay the attorneys' fees.  *See In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 399 (D. Mass. 2008) (review of requested fee award is required to ensure the reasonableness of the award and confirm that fee award did not come at the expense of "less-than-optimal settlement terms").  Courts have broad discretion to award attorneys' fees. *See, e.g.,*

---

[4] Settlement Agreement § 5.
[5] *Id.*
[6] Class Counsel's efforts on behalf of the Class are described in the Levis Declaration, and the declaration of (a) Christian Levis on behalf of Lowey Dannenberg, P.C. ("Levis Fee Decl."); (b) Gary F. Lynch on behalf of Carlson Lynch, LLP ("Lynch Decl."); (c) Russell S. Thompson, IV on behalf of Thompson Consumer Law Group, PC ("Thompson Decl."); (d) Warren Postman on behalf of Keller Lenkner LLC ("Postman Decl."); and (e) Jason M. Leviton on behalf of Block & Leviton LLP ("Leviton Decl.") in support of this motion, filed herewith.

*Bezdek*, 79 F. Supp. 3d at 349; *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 164 (D. Mass. 2015).   A discussed below, the requested fee award of $1,186,967.05 reflecting a multiplier of 1.77 on Class Counsel's lodestar of $670,199 is not only objectively fair and reasonable, but the method in which it was negotiated—at arm's length, with the assistance of an experienced mediator, only *after* reaching agreement on the material terms of a settlement— confirms the substantive fairness of the process in ensuring that Drizly's agreement to pay up to a certain amount in fees, did not come at the expense of the Class.

### A. The Lodestar Method is the Appropriate Means by which to Award Attorneys' Fees for this Settlement

When a class action settlement provides that the settling defendant will separately pay attorneys' fees, state law applies in determining the attorneys' fee award. *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F. 3d 4, 15 (1st Cir. 2012).   Under Massachusetts law,[7] the reasonableness of attorneys' fees in cases that do not involve a common fund are typically determined using the lodestar method.  *Id.* at 21; *see also Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 526, n.10 (1st Cir. 1991) (in "absence of any true common fund," the lodestar method is appropriate to evaluate whether attorneys' fees are reasonable); *In re TJX*, 584 F. Supp. 2d at 398 (applying the lodestar method in a data breach case that did not create a common fund). In applying the lodestar method, "attorneys' fees are calculated by determining the number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates." *In re TJX*, 584 F. Supp. 2d at 398.

Once a reasonable lodestar value is determined, the lodestar value may be adjusted upward or downward based on a multi-factor analysis that involves evaluating:

---

[7] The Settlement Agreement contains a choice of law section that provides Massachusetts law applies. Settlement Agreement § 24.

the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.

*In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d at 164. It is also appropriate to apply a multiplier to compensate counsel for the risks related to pursuing contingent fees in the case, delay in payment, and quality of representation. *See Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 951 (1st Cir. 1984); *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d at 164-165. Cases dealing with novel issues of law or implicating concerns of public interest may also justify the application of a multiplier. *In re Volkswagen and Audi Warranty Extension Litig.*, 89 F. Supp. 3d at 165 ("A case that does not involve any novel issues of law or implicate the public interest, for example, may be a poor candidate for an attorneys' fees multiplier.").

Evaluating Class Counsel's work in total, the lodestar value of their work is reasonable, and their fee request, reflecting a 1.77 multiplier, is supported by the various factors by which courts may adjust the value of their lodestar.

**B.  Class Counsel's Lodestar is Reasonable**

Class Counsel expended over 1,100 hours resulting in a total lodestar of more than $670,199. Levis Decl. ¶ 56. These hours were reasonable and necessary to litigate this case effectively and to achieve the best possible recovery on behalf of the Class. The Settlement was only reached after Class Counsel conducted an extensive factual investigation and legal analysis that included reviewing and analyzing public reports, press releases, and website disclosures of the breach; reviewing an independent investigation of the breach; and analyzing the applicable law regarding Plaintiffs' claims and Defendants' defenses, including issues pertaining to causation, damages and the enforceability of browse wrap agreements. *Id.* ¶¶ 17, 21, 24-25, 27, 29-30, 40. Class Counsel spent weeks preparing and amending a comprehensive class action complaint after

multiple actions were filed in two separate districts—by plaintiffs of different states represented by separate counsel—to streamline the litigation process and avoid unnecessary motion practice. *Id.* ¶¶ 18-21. After Drizly filed its motion to compel arbitration, Class Counsel researched and prepared counterarguments in response to Drizly's motion while also developing an arbitration strategy. *Id.* ¶¶ 23-25. Once the Parties agreed to mediate the dispute, Class Counsel went to work propounding and responding to pre-mediation requests for documents and information; working with Plaintiffs to collect and review documents in response to Drizly's requests; analyzing Drizly's production and subsequent responses to follow up requests; and conducting additional research in preparation for drafting a comprehensive mediation statement. *Id.* ¶¶ 27-32. This work supported Class Counsel's arguments presented during the lengthy mediation session and subsequent negotiations, ensuring they were fully informed of the scope and nature of the claims and defenses. *Id.* ¶¶ 33-34, 39-40. Given the short, but intense duration of the case over ten months, the hours Class Counsel accrued for all of this work are reasonable.

Additionally, the billing rates Class Counsel charged for this work are reasonable. Reasonable hourly rates are those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Giorgio v. Duxbury*, No. 12-11171-LTS, 2016 WL 3983232, at \*2 (D. Mass July 25, 2016) (Sorokin, J.). When a case is national in scope and requires the expertise of counsel from outside the forum, the relevant community may be a location other than the forum, or even the national legal community, and the relevant rates are the out-of-town or "nationally prevailing rates" for similar attorneys' services. *See, e.g., Williams v. Poulous*, Nos. 94-2057, 94-2058, 1995 WL 281451, at \*4 (1st Cir. May 12, 1995) ("out-of-town rates may be applied if the complexities of a particular case require that particular expertise of non-local counsel . . . or 'when the case is an undesirable one which capable

attorneys within the forum community are not willing to prosecute or defend[.]'"); *Spruill v. Alexander*, No. 09-292S, 2011 WL 2413837, at *4-5 (D.R.I. Mar. 31, 2011) (applying out-of-town rates because of attorneys' expertise); *Lucas v. Kmart Corp.*, No. 99-cv-01923-JLK-CBS, 2006 WL 2729260, at *4 (D. Colo July 27, 2006) ("[T]he relevant community for purposes of determining a reasonable billing rate for Class Counsel likely consists of attorneys who litigate nationwide, complex class actions.").

Here, the litigation required the expertise of counsel experienced in class actions and the niche practice area of data breach litigation. Class Counsel brought claims on behalf of a nationwide class, as well as state subclasses under the laws of several state's consumer protection statutes (Massachusetts, New York, Arizona, and California) arising out of the Drizly data breach. Aside from Block & Leviton, who primarily served as liaison counsel prior to the Parties reaching the Settlement, Class Counsel are based out-of-state, *i.e.*, New York, Pennsylvania, Arizona, and Washington, D.C. Class Counsel each has experience in data breach and/or consumer protection class actions, which were necessary pre-requisites to litigate this action.

Class Counsel's rates for attorneys working on this Action reflect a range for partner-level attorneys of $575 – $1025, associates of $400 – $800, and paralegal and other non-attorney staff of $200 – $315. These rates are comparable to those charged in national, complex class actions, including data breach cases. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, ECF No. 113 (D. Colo. Nov. 1, 2019) (listing billing rates between $950 and $675 for partners, $500-$325 for associates, and $250-$165 for professional staff to calculate lodestar in data breach class action); ECF No. 128 (Dec. 16, 2019) (finding attorneys' fees and costs reasonable); *In re Arby's Restaurant Grp, Inc. Data Sec. Litig.*, 17-cv-01035-WMR, ECF Nos. 188-2, 188-3, 188-4, 188-5 (N.D. Ga. May 7, 2019) (listing rates up to $950 for partners and up to

$864 for other attorneys in data breach class action), ECF No. 191 (June 6, 2019) (order determining that "the hourly rates . . . are reasonable for a case of this nature"); *Bray v. Gamestop Corp.*, No. 17-cv-01365-JEJ, ECF Nos. 47-1, 47-2 (D. Del. Nov. 26, 2018) (calculating lodestar in data breach class action using rates between $750-$575 for partners and $475-$350 for associates), ECF No. 54 (Dec. 19, 2018) (approving attorneys' fees). Accordingly, the rates used by Class Counsel should be similarly considered reasonable.

### C. The Relevant Factors Considered by Courts in this Circuit Support Awarding a Multiplier on Class Counsel's Lodestar

With Class Counsel's lodestar providing a reasonable baseline, Class Counsel seek a multiplier of 1.77 in requesting a fee of $1,186,967.05. Courts in the First Circuit consider a variety of factors to determine whether counsel's fee request is reasonable: "(1) the reaction of the class members to the settlement and proposed attorneys' fees; (2) the skill and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risk that the litigation will be unsuccessful; (5) the amount of time devoted to the case by counsel, and (6) the extent of the benefit obtained." *In re TJX*, 584 F. Supp. 2d at 401. The contingency risk and the importance of the litigation also provide a basis for evaluating the fee request. *See, e.g., Hill v. State Street Corp.*, No. 09-12146-GAO, 2015 WL 127728, at *18 (D. Mass Jan. 8, 2015) ("In class actions with significant contingency risks, fees representing multiples above the lodestar may be awarded to reflect contingency risks and other relevant factors."); *Iverson v. Braintree Prop. Assocs., L.P.*, No. 04-cv-12079-NG, 2008 WL 552652, at *2 (D. Mass. Feb. 26, 2008); *Countin v. Young & Rubican Puerto Rico, Inc.*, 124 F.3d 331, 337 n.3 (1st Cir. 1997). When these factors are considered, Class Counsel's fee request is reasonable.

### 1.   The Extent of The Benefit Obtained Supports the Requested Award

The settlement provides substantial benefits to Class Members. First, each Class Member will receive (subject to adjustments based on Class Member participation) an individual cash payment of approximately $14 and a service fee of $1.99. Such benefits are comparable to those provided in other recent data breach settlements, including those involving sensitive payment card data. *See, e.g., In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-06019-GEKP, ECF No. 181 (E.D. Pa. Feb. 19, 2021) ($5 gift card or $15 gift cards with proof of actual or attempted fraud); *In re TJX Cos. Retail Sec. Breach Litig.*, No. 07-cv-10162-WGY, ECF No. 351-4 (D. Mass July 3, 2008) ($30 voucher or $15 check); *Cotter v. Checkers Drive-in Restaurants, Inc.*, No. 19-cv-01386-VMC-CPT, ECF. No. 43-1 (M.D. Fla. May 6, 2020) (four $5 vouchers with attestation). The monetary benefits are particularly noteworthy given Drizly's assertion that financial information may not have been compromised in the Data Breach.[8] *Compare Adkins v. Facebook, Inc*., No. 18-05982 WHA, 2021 WL 1817047, at *1 (N.D. Cal. May 6, 2021) (settlement arising out of a data breach case compromising non-financial information or Social Security numbers provided only injunctive relief).

Further, all Class Members are eligible to receive these benefits *without* having to provide proof of loss or proof of purchase—a unique feature among data breach settlements, which typically required documentation— reducing the burden on Class Members associated with participating in the Settlement. *Compare, e.g.*, *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-06019-GEKP, ECF No. 181 (E.D. Pa.) (requiring proof of actual or attempted fraud for $15 gift card); *In re Sonic Corp. Customer Data Breach Litig.*, No. 17-md-02807-JSG, ECF No. 144-2 (N.D. Ohio Dec. 14, 2018) ($10 payment with proof of purchase or $40 payment with proof of fraudulent

---

[8] Zach Whittaker, *Alcohol delivery service Drizly confirms data breach*, TECH CRUNCH, (July 28, 2020) https://techcrunch.com/2020/07/28/drizly-data-breach/.

charges); *Bray v. Gamestop Corp.*, No. 17-cv-01365-JEJ, ECF No. 40-1 (D. Del. July 16, 2018) ($15 per hour, up to three hours, for documented time and effort and $22 with proof of fraudulent charges). Unlike these examples, here Class Members simply need to file a proof of claim form with their biographical information to receive a portion of the Settlement Cash Payment and the Settlement Service Credit Amount. This process has resulted in a positive response from the Class, with an estimated 6.16% of the class filing claims to date—in line with historical participation rates in consumer class actions. *See* Fed. Trade Comm'n, CONSUMERS AND CLASS ACTIONS: A RETROSPECTIVE AND ANALYSIS OF SETTLEMENT CAMPAIGNS 11 (2019) *available at* https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf ("[T]he median calculated claims rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%.").

Lastly, in addition to monetary compensation, the settlement provides for injunctive relief, requiring Drizly to adopt and maintain adequate security measures. These measures were developed based on information known about how third parties gained unauthorized access to Drizly's systems, and specifically tailored prevent and detect similar security breaches in the future. *See* Settlement Agreement § 4; *see also In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-md-2800-TWT, 2020 WL 256132, at *3 (N.D. Ga. Mar. 17, 2020) (finding commitment to invest in "data security and related technology substantially benefits the class because it ensures adequate funding for securing plaintiffs' information long after the case is resolved."), *rev'd in part on other grounds*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. June 3, 2021). These changes will provide long-term relief for Drizly customers (many of which continue to use the service).

Class Counsel's success in securing these benefits that address not only the current but potential future harm resulting from the Data Breach weighs heavily in favor of awarding the requested attorneys' fee.

### 2. The Complexity of the Litigation Favors the Fee Award

While the Action's duration was not long, the highly technical and complex nature of the case demonstrates why the fee award is warranted. This case was filed in August 2020 in the District of Massachusetts. Shortly thereafter, a similar action was filed in the District of Arizona. *See Birdoes v. Drizly, LLC*, No. 2:20-cv-01639. Counsel for *Barr* and *Birdoes* counsel conferred and determined that the most successful way forward for the Class was to have the *Birdoes* action dismissed and for Plaintiffs to file an Amended Complaint incorporating all Plaintiffs' claims. The First Amended Class Action Complaint asserted causes of action in negligence, negligence *per se*, breach of implied contract, unjust enrichment, and implicated the laws of several states' consumer protection statutes (Massachusetts, New York, Arizona, and California), including the recently enacted California Consumer Privacy Act.

On November 18, 2020, Drizly filed a motion to compel arbitration, arguing that its terms contained an arbitration provision and class action waiver that would require Class Members to individually arbitrate claims. *See* ECF No. 36-39. This presented a significant risk to Plaintiffs' ability to recover on behalf of the Class, as other courts in this District had enforced similar arbitration provisions in the past. *Compare Theodore v. Uber Tech., Inc*., 442 F. Supp. 3d 433, 440-42 (D. Mass. 2020) (holding similar browse-wrap agreement was not conspicuous and did not bind consumers to arbitration), *with In re Daily Fantasy Sports Litig*., No. 16-md-02677-GAO, 2019 WL 6337762, at *10 (D. Mass. Nov. 27, 2019) (finding consumers agreed to arbitrate claims through similar browse-wrap agreement). Class Counsel adopted a two-pronged strategy: they extensively researched validity of Drizly's arbitration and class action waiver arguments,

preparing an opposition to Drizly's motion to compel, while being ready to move forward on behalf of Plaintiffs and individual class members in an arbitration.

In December 2020, before the filing deadline for Plaintiffs' opposition, the Parties agreed to mediate their dispute. This involved significant time and effort to properly advocate for the best possible recovery on behalf of class members. On December 11, 2020, the Parties exchanged pre-mediation information and document requests to assist in resolution of this action addressing key issues related to Plaintiffs' claims and Drizly's potential defenses. The Parties also exchanged a list of mediators, ultimately agreeing on the Honorable Diane M. Welsh (Ret.), U.S. Magistrate Judge (E.D. Pa.). Class Counsel used the information provided by Drizly as a springboard for additional investigation into the Data Breach, interviewing potentially impacted individuals, analyzing public disclosures and reports concerning the Data Breach, and determining whether Drizly's customers' information was available for purchase on the Dark Web. This information helped to inform Plaintiffs and Class Counsel about the strengths and weakness of their claims and provided for the drafting of a compelling mediation brief. The Parties submitted their respective mediation statements to Judge Welsh on January 11, 2021.

On January 15, 2021, the Parties engaged in a video conference mediation session with Judge Welsh that ran for more than twelve hours without reaching a resolution. With the assistance of Judge Welsh, negotiation continued throughout the weekend, culminating with an agreement in principle among the Parties on January 19, 2021.  It took several more weeks to negotiate the Settlement Agreement. In addition to memorializing the terms of their agreement, the Parties expended considerable effort mutually selecting a claims administrator, and working with that Administrator to develop a Class Notice plan that would leverage all available information and technology—including notifications within Drizly's order platform—to reach a high proportion of

Class Members. Class Counsel regularly monitored the performance of the Class Notice, working with the Settlement Administrator to improve the visibility of the notice via carefully timed direct emails to Class Members. The various challenges encountered in this Action further support the proposed fee award.

> **3.   The Contingency and Litigation Risk Justify the Application of a Lodestar Multiplier**

Courts also recognize that the contingent nature of attorneys' fee in class actions is a relevant consideration in determining whether a fee request is reasonable. *See In re TJX*, 584 F. Supp. 2d at 398 (acknowledging that fee may be enhanced to account for the contingency risk).

There were significant risks that could have prevented any recovery for the Class, and therefore, Class Counsel. If not for the Settlement, Plaintiffs would immediately be faced with the potential for an adverse ruling on Drizly's motion to compel arbitration as First Circuit law is mixed regarding whether a consumer is bound by a terms of service provided through a link during the registration process. *Compare Theodore*, 442 F. Supp. 3d at 440-42, *with In re Daily Fantasy Sports Litig.*, 2019 WL 6337762, at *10. A successful motion to compel would effectively defeat any opportunity to litigate this Action on a class-wide basis, forcing arbitration and foreclosing many, if not all, Settlement Class Members from recovery unless they were willing to pursue their claims in individual arbitration, a costly process involving a significant investment of time and resources.  Further, any decision on Drizly's motion to compel would likely have prompted an appeal, which would take significant time, effort, and resources while delaying any recovery.

Even if Plaintiffs were successful in resisting Drizly's attempt to compel arbitration, there were other substantial barriers to a recover in this case. First, data breach litigation is a relatively new and uncertain area of law. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex

13

and risky."). Second, Plaintiffs faced an uphill battle to any recovery because of issues involving causation and damages are hotly contested in data breach cases.

Lastly, Plaintiffs would have incurred significant costs throughout fact and expert discovery as data breach cases concern highly technical issues involving computer systems and cybersecurity. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020) (listing "more discovery" as one of the significant expenses for continuing a data breach litigation)**;** *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 212 (D. Me. 2003) (noting that, absent settlement, plaintiffs' challenges would include "significant and expensive additional discovery" and "hiring more experts and opposing the defendants' experts"); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-02522, ECF No. 724 (D. Minn. Feb. 9, 2016) (data breach case involving the review of over a million pages of documents and depositions of 36 former or current employees and experts). Given the alleged misconduct, this Action would necessarily involve a battle of experts with respect to damages and other issues, likely escalating the litigation costs. The costs and risks would only further increase as the Parties contest class certification and motions *in limine*, and proceed through to trial and any related appeals.

### 4.   Amount of Time Devoted to the Case by Counsel

Class Counsel devoted a significant amount of time to prosecuting Plaintiffs' claims to ensure that the best possible outcome for the Class could be achieved.  That Class Counsel efficiently and effectively advanced the case on the Class's behalf should be viewed as a tremendous benefit to the Class, providing relief earlier than might otherwise have been available. *See, e.g., Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013) ("[C]ourts encourage early settlement of class actions . . . because early settlement allows class members to recover

without unnecessary delay and allows the judicial system to focus resources elsewhere.");

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.612 (2004).

### 5. The Reaction Of The Class Members

Typically, courts give this factor substantial weight and find that the near absence of objections from the Class to the attorneys' fees request supports the reasonableness of the attorneys' requested fees. *See Bezdek*, 79 F. Supp. 3d at 347 (crediting the "overwhelmingly positive" reaction of the class, which yielded only 23 opt-outs and 3 objections); *In re Puerto Rico Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 473 (D.P.R. 2011) ("Three objections, with none of the three challenging the amount of the Settlements, out of a potential Class of 61,854, certainly weights in favor of approval."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court."). Here, notice has been emailed to 2,357,030 potential Class Members resulting in no objections and only thirty-seven opt outs to date.  Cowen Decl. ¶¶ 10-11. In comparison, over 150,981 claims have been filed.  *Id.* ¶ 12. While objection deadline has not yet passed, the reaction of the Class so far strongly suggests their approval of the Settlement and the proposed fee award.

### 6. Attorneys' Skill and Efficiency

Class Counsel have decades of experience leading complex class actions.[9] With regard to data breach cases, specifically, Lowey Dannenberg is leading the prosecution of several other data breach and privacy cases, including as sole or court-appointed co-lead counsel.[10]  Lowey Dannenberg and Carlson Lynch are also currently working together as court-appointed co-lead counsel representing financial institutions impacted by the Wawa data breach, which is estimated

---

[9] *See* Exhibits 6 – 10 (Class Counsel firm resumes) attached to the Mar. 29, 2021 Declaration of Christian Levis in Support of Plaintiffs' Preliminary Approval Motion ("Levis Prelim. Approval Decl."), ECF Nos. 52-9 – 52-13.

[10] *See, e.g.*, *In re Rutter's Inc. Data Sec. Breach Litig.*, No. 20-cv-00382 (M.D. Pa.); *Hozza v. PrimoHoagies Franchising, Inc.*, No. 20-cv-04966 (D.N.J.); *Cohen v. Northeast Radiology, P.C..*, No. 20-cv-01202 (S.D.N.Y.).

to have impacted 30 million individuals. *See In re Wawa Data Sec. Litig.*, No. 19-cv-06019-GEKP (E.D. Pa.). Carlson Lynch also has significant experience prosecuting data breach cases, having litigated some of the most high-profile data breach class actions in the past decade, including Home Depot, Equifax, Wendy's, and Target.[11] Thompson Consumer Law Group, PC, equally has litigated a multitude of complex class actions.[12] As has  Keller Lenkner, which in its own right has significant experience in complex class actions.[13]  Keller Lenkner also has significant experience in mass arbitrations, a unique skill set that would have benefited the class in the event that Drizly's motion to compel was granted.[14] Block & Leviton, headquartered in Boston, Massachusetts, has served as counsel in many of the largest and most important class and derivative actions of the last few years. [15]

Counsel utilized their combined experience and skill sets to achieve the settlement that provides substantial benefits to the class. Further, for its part, Drizly is represented by counsel from one of the top privacy and data security law firms in the country, with extensive experience in litigating technology-related actions. The extensive experience of defense counsel enhances the significance of the results Class counsel have achieved.

---

[11] *See, e.g., In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 17-md-2800 (N.D. Ga.); *In re: Home Depot, Inc., Customer Data Sec. Breach Litig.*, Case No. 14-md-2583 (N.D. Ga.); *First Choice Fed. Credit Union v. The Wendy's Co.*, No. 16-cv-0506 (W.D. Pa.); *In re: Target Corp. Customer Data Sec. Breach Litig.*, No. 14-cv-01422-PAM-JJK (D. Minn. May 15, 2014).

[12] *See, e.g., Stewart v. Florida Community Law Group, P.L.*, No. 6:18-cv-02111 (M.D. Fla.); *Maloy v. Stucky, Lauer & Young, LLP*, No. 1:17-CV-00336-TLS (N.D. Ind.).

[13] *See, e.g., Hall-O'Neil v. Amazon.com, Inc.*, No. 19-cv-00910 (W.D. Wash.); *Klein v. Facebook, Inc.*, No. 20-cv-08570 (N.D. Cal.); *Iderstine v. Live Nation Enter., Inc.*, No. 20-cv-03888 (C.D. Cal.)).

[14] *See* firm resume, ECF No. 52-11 at 9 (arbitration cases include Doordash, Postmates, and Intuit).

[15] *See, e.g., In re BP Sec. Litig.*, No. 2185 (S.D. Tex.); *In re McKesson Corp. Derivative Litig.*, No 4:17 cv 01850 (ND Cal); *In re Pilgrim's Pride Corp. Derivative Litig.*, No. 2018-0058-JTL (Del. Ch.); *In re Snap Secs. Cases*, No JCCP 4960 (Cal Sup Ct); *In re Handy & Harman, LTD. Stockholders Litig.*, No. 2017-0882 (Del. Ch.); *In re Onyx Pharm., Inc. Shareholder Litig.*, No. CIV523789 (Cal. Sup.); *Moitoso v. FMR LLC*, No. 18-12122 (D. Mass.); *Toomey v. Demoulas*, No. 19-11633-LTS (D. Mass.).

### 7.   The Importance of the Litigation Favors the Award

In 2020, a staggering 36 billion records globally were exposed as a result of data breaches.[16] Instances of identity theft spiked in the same year, with the Federal Trade Commission receiving 1.4 million reports of identity theft in 2020 compared to 2019.[17] On average, a victim spends approximately 30 hours resolving problems caused by identity theft and 60 hours resolving the opening of fraudulent accounts. *See Daly v. Met. Life Ins. Co.*, 782 N.Y.S.2d 530, 535 & n.6 (N.Y. Sup. Ct. 2004).

Given the estimated 2.5 million Class Members impacted by the Drizly Data Breach, and relatively small amount of individual damages, pursuing claims on an individual basis would have been nearly impossible. Absent the class action vehicle, these consumers most likely would have no recovery. *See In re Puerto Rican Cabotage Antitrust Litig.,* 815 F. Supp. 2d at 463 ("Class action plaintiffs' attorneys provide an invaluable service by aggregating the seemingly insignificant harms endured by a large multitude into a distinct sum where the collective injury can then become apparent."); *Mazola v. May Dep't Stores Co.*, No. 97-cv-10872-NG, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) (class actions "give[] voice to relatively small claimants who may not be aware of statutory violations or have an avenue to relief. . . . the only way in which to make such actions economically feasible is to award [attorneys' fees.]"). Actions like this one are necessary and important to deter companies from adopting laissez-faire security measures that continue to put consumers at risk.  This litigation is not only important, but critical, to ensure that consumers are compensated for their harm and to hold companies accountable.

---

[16]   2020 Q3 REPORT, DATA BREACH QUICKVIEW, RISK BASED SECURITY, *available at* https://pages.riskbasedsecurity.com/hubfs/Reports/2020/2020%20Q3%20Data%20Breach%20QuickView%20Report.pdf.

[17]   Seena Gressin, *Identity Theft Awareness Week Starts Today*, FTC, (Feb. 1, 2021), https://www.consumer.ftc.gov/blog/2021/02/identity-theft-awareness-week-starts-today.

### 8. Other Fee Awards in Similarly Complex Actions Further Support the Reasonableness of Class Counsel's Fee Request

Class Counsel's requested fee award reflects reasonable lodestar multiplier of 1.77, which is comparable and consistent with other awards. *See, e.g., In re TJX*, 584 F. Supp. 2d at 408 (granting fee award of $6,500,000, finding that multiplier of 1.97 was within the range of reasonableness); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (finding a multiplier of 2.02 for a requested award of $22,311,000 to be within the range of reasonableness for lodestar cross-check purposes); *Krausz v. ING Investments, LLC*, No. 06-12145, 2008 WL 217102, at *1 (D. Mass. Jan 23, 2008) (applying multiplier of 2 to the lodestar so as to not "unnecessarily penalize counsel for bring the case to quick resolution" and awarding $105,776 in fees); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 271 (D.N.H. 2007) (in conducting lodestar cross-check, finding multiplier of 2.697 acceptable); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148-PBS, 2009 WL 2408560, at *1 (D. Mass Aug. 3, 2009) (under lodestar cross-check, finding 8.3 multiplier reasonable). In light of this and the other factors discussed above, the multiplier is reasonable and should be applied in granting the fee request.[18]

---

[18] Further, while applicable law does not provide for such a comparison, the percentage of the attorneys' fee in comparison benefits received by the Class also supports the fee award. While claims continue to be filed and auditing is ongoing, if all the filed claims to date are eligible, $2,113,734 would be paid to Class Members and $300,452.19 in service credits issued for a total direct relief to the Class of $2,414,186.19. Accordingly, as a percentage of the total payments made by Drizly, an award of $1,200,000 in attorneys' fees and expenses would represent 33.20%. Further, this figure does not account for the $2.3 million in valued injunctive relief provided under the Settlement Agreement. Drizly has agreed to make real, substantial changes to its data security, including hiring an executive level employee specifically responsible for data security and undergoing routine penetration tests to ensure its data security will prevent another breach. When viewed in relation to the monetary benefits provided to Class Members and the value of the injunctive relief, the total attorneys' fees requested would represent only 20.26% of the Settlement Value. *See, e.g., Bezdek*, 79 F. Supp. 3d at 350 (finding 25% of the settlement fund in fees "falls squarely within what is recognized in this circuit as the range of reasonable" for attorneys' fees); *Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 WL 632238, at *8 (D.R.I. Feb 17, 2016) (awarding 30% of the common fund in attorneys' fees); *Mazola*, 1999 WL 1261312, at *4 ("[I]n this circuit, percentage awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions.").

## II. Class Counsel Should be Reimbursed for Their Reasonably Incurred Litigation Expenses

Plaintiffs' Counsel have incurred a total of $13,032.95 in litigation expenses that were necessary and incidental to the representation of the Class, including costs related to pursuing mediation, filing fees, and legal research expenses. *See* Levis Decl.; Levis Fee Decl.; Thompson Decl.; and Leviton Decl. Courts routinely grant awards to pay for these types of expenses. *See Bezdek*, 79 F. Supp. 3d at 351-52 (finding "costs associated with mediation, legal research, filing fees, consultation with experts, photocopying, and travel to hearings, depositions, and meeting . . . reasonable."). Descriptions of the aggregate expenses incurred are provided in the Levis Fee Decl., Thompson Decl., and Leviton Decl. Per the Settlement Agreement, litigation expenses will also be paid by Drizly from the $1,200,000 allocation to attorneys' fees and expenses.

## III. Plaintiffs' Request for an Incentive Award Should be Granted

Plaintiffs respectfully request an Incentive Award of $8,000 to be shared equally by Plaintiffs. Plaintiffs' requested incentive award is in line with similar awards this Court has previously issued.[19] The proposed incentive award is also similar to awards in other data breach cases.[20] Drizly has also agreed to pay the Incentive Award. Settlement Agreement § 5(B).

"In granting incentive awards to named plaintiffs in class actions, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also the important public policy of fostering

---

[19] *See, e.g., Leach v. Honeywell Int'l, Inc.*, No. 14-cv-12245-LTS, ECF No. 106 (D. Mass. Sept. 7, 2017) (approving incentive awards of $4,000 each to three named plaintiffs, and $2,000 each to two named plaintiffs.); *Pashamova v. New Balance Athletic Shoe, Inc.*, No. 11-cv-10001-LTS, ECF No. 110 (D. Mass. Jan. 28, 2013) (granting *incentive awards of $5,000 to each of the named plaintiffs); Toomey v. DeMoulas Super Markets, Inc.*, No. 19-cv-11633-LTS, ECF No. 99 (D. Mass. April 7, 2021) (awarding incentive payments of $10,000 each to three named plaintiffs).

[20] *See, e.g., Bray. v. GameStop Corp.*, No. 17-CV-01365, ECF No. 54 (D. Del. Dec. 19, 2018) ($3,750 per class representative); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-CV-01415, ECF Nos. 128-29 (D. Colo. Dec. 16, 2019) ($2,500 per class representative); *Weiss v. Arby's Restaurant Grp. Inc.*, No. 17-cv-01035, ECF No. 190 (N.D. Ga. June 6, 2019) ($4,500 per class representative); *Torres v. Wendy's Int'l LLC*, No. 6:16-cv-00210, ECF No. 157 (M.D. Fla. Feb. 26, 2019) ($5,000 per class representative).

enforcement of laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." *Bussie v. Allamerica Fin. Corp.*, No. CIV.A. 97-40204-NMG, 1999 WL 342042, at *3 (D. Mass. May 19, 1999).

Here, Plaintiffs' active service in the Action supports payment of the Incentive Award. They vigorously pursued the interests of the Class by undertaking the responsibilities attendant with serving as a named plaintiff, including providing information for the complaint, reviewing pleadings and filings, searching their files for relevant records in preparation for mediation, communicating with Class Counsel, and making themselves available whenever needed. *See* Levis Decl. ¶¶ 47-50. Further, granting the Incentive Award would promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See In re Relafen Antitrust Litig.*, 231 F.R.D. at 82 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.").

## CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court award attorneys' fees in the amount of $1,186,967.05, $13,032.95 for payment of their litigation expenses, and an Incentive Award of $8,000 to be shared equally by the named Plaintiff.

Dated:  July 13, 2021                                Respectfully submitted,

                                                     */s/ Jason M. Leviton*
                                                     Jason M. Leviton (BBO #678331)
                                                     Jacob A. Walker (BBO #688074)
                                                     **BLOCK & LEVITON LLP**
                                                     260 Franklin Street, Suite 1860
                                                     Boston, MA 02110
                                                     Tel: (617) 398-5600
                                                     jason@blockleviton.com
                                                     jake@blockleviton.com

Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Anthony M. Christina (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Tel: (215) 399-4770
Fax: (914) 997-0035
achristina@lowey.com

Gary F. Lynch (admitted *pro hac vice*)
Jamisen A. Etzel (admitted *pro hac vice*)
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Fax: (412) 231-0246
glynch@carlsonlynch.com
jetzel@carlsonlynch.com

Warren D. Postman (admitted *pro hac vice*)
Jason Ethridge (admitted *pro hac vice*)
**KELLER LENKNER LLC**
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
Tel: (202) 918-1123
wdp@kellerlenkner.com
jason.ethridge@kellerlenkner.com

Russell S. Thompson, IV (admitted *pro hac vice*)
**THOMPSON CONSUMER LAW GROUP, PC**
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Tel: (602) 388-8898
Fax: (866) 317-2674
rthompson@consumerlawinfo.com

*Class Counsel*