UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES BARR, MARY BIRDOES, JEFF BOWLIN, and RYAN LANDIS, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DRIZLY, LLC f/k/a DRIZLY, INC., and THE DRIZLY GROUP, INC.,<br><br>Defendants. | Case No. 1:20-CV-11492<br><br>**The Honorable Leo T. Sorokin**<br>**Magistrate Judge Donald L. Cabell** |

## DECLARATION OF MARK COWEN

Pursuant to 28 U.S.C. § 1746, I, Mark Cowen, declare as follows:

1. I am a Project Manager with A.B. Data, Ltd. ("A.B. Data"), the Settlement Administrator in this Action.

2. I am fully familiar with the facts contained herein based upon my personal knowledge and information provided to me by Class Counsel and A.B. Data staff members. If called as a witness, I could and would testify competently thereto.

3. I submit this Declaration in support of Plaintiffs' motion to distribute the unclaimed portion of the Escrow Account and pay the settlement administrator's additional costs.

4. Pursuant to ¶ 14 of the Court's November 4, 2021, Final Approval Order, the Court authorized A.B. Data to act as the Settlement Administrator in connection with the Settlement of the above captioned Action.[1] ECF No. 73.

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as set out in the Stipulation and Agreement of Settlement (the "Settlement Agreement"), including Appendices A – B, ECF No. 52-4.

1

**CLAIM PAYMENTS, CHECK ISSUANCE, AND REISSUANCE PROCESS**

5. On February 1, 2022, A.B. Data commenced distribution of $11.83 to each of the Class Members eligible to receive a Claim Payment (*i.e.*, the "Authorized Claimants"). Drizly paid a total of $3,150,000 (the "Settlement Cash Payment") to fund the Claim Payments to Authorized Claimants. Upon depositing the Settlement Cash Payment into the Escrow Account, Drizly's interest in the funds was extinguished and any undistributed funds would not revert to Drizly.[2]

6. Pursuant to the Settlement Agreement, Authorized Claimants could receive their Claim Payment through one of multiple electronic payment platforms or by check. SA, Appendix A at ¶ 2. A total of 168,509 Authorized Claimants received their Claim Payment via one of the electronic payment platforms, totaling $1,993,461.47.

7. If an Authorized Claimant did not select an electronic payment platform in response to the initial digital payment communication, or any follow-up communications from A.B. Data, A.B. Data sent a check to the Authorized Claimant at the mailing address provided on their Claim Form. SA, Appendix A at ¶ 2.

8. As part of the distribution process, 97,677 checks for Claim Payments were issued and mailed to Authorized Claimants. A total of 54,575 Authorized Claimants cashed their checks for a total of $645,622.25. As of September 15, 2023, 43,102 checks with a combined value of $509,896.66 had not been cashed.

---

[2] *See* SA § 3(B) ("Upon payment of the Settlement Cash Payment into the Escrow Account pursuant to this Section, all risk of loss with respect to the Claims Payments shall pass to the Escrow Fund, and any and all remaining interest or right of Drizly in or to the Escrow Account, if any, shall be absolutely and forever extinguished.").

9. Pursuant to the Settlement Agreement, all settlement checks included language that advised the holder that: "This check must be cashed within sixty (60) days, after which time it is void." SA, Appendix B at ¶ 3.

10. If a check became void, an Authorized Claimant had until six (6) months after the Effective Date to request reissuance. SA, Appendix B at ¶ 4. If the Authorized Claimant did not request a reissued check within this period, the Authorized Claimant's right to receive monetary relief from the Settlement was extinguished. *Id.*

11. Pursuant to the Settlement Agreement, the same provisions described above applied to any reissued check. SA, Appendix B at ¶ 5. The Settlement Agreement also stated that for any checks issued or reissued for any reason more than one hundred eighty (180) days from the Effective Date (December 27, 2022), subsequent requests for reissuance need not be honored after such checks become void. SA, Appendix B at ¶ 5.

**EFFORTS TO CONTACT AUTHORIZED CLAIMANTS WITH UNCASHED CHECKS**

12. More than one year has now passed since A.B. Data commenced the distribution of Claim Payments.

13. A.B. Data engaged in repeated efforts to encourage Authorized Claimants to cash their settlement checks.

14. A.B. Data consulted with Class Counsel and emailed multiple rounds of reminder notice to prompt Authorized Claimants to cash and/or request reissuance of their checks.

15. On or around February 14, 2023, A.B. Data sent emails to 38,312 Authorized Claimants with an uncashed check to remind them to cash their check, or to request reissuance of their check. A.B. Data's first email reminder notice indicated that checks would become void on March 31, 2023. As a result of A.B. Data's first email reminder notice, 568 Authorized

3

Claimants requested reissuance of their check, and 486 Authorized Claimants cashed their check between February 14, 2023 and the stated void date of March 31, 2023.

16. On or around May 30, 2023, A.B. Data sent emails to 5,665 Authorized Claimants whose initial payments were returned as undeliverable and for whom an updated address was not identified after undertaking a tracing effort. As a result of A.B. Data's second email reminder notice, 206 Authorized Claimants were reissued a check on June 29, 2023.

17. On or around July 25, 2023, A.B. Data sent emails to 93 Authorized Claimants to remind them to cash the checks that had been reissued on June 29, 2023. A.B. Data's third email reminder notice indicated that the checks would become void on July 31, 2023. As a result of A.B. Data's second and third email reminder notices, 126 Authorized Claimants cashed their reissued checks.

18. All settlement checks for Claim Payments finally became void on August 14, 2023.

19. As of August 15, 2023, a total of $510,574.43[3] remains in the Escrow Account as uncashed funds. If A.B. Data were to attempt a second distribution of the remaining funds in the Escrow Account to those Authorized Claimants that had redeemed their payments, the additional administrative costs of such an effort would total $148,442 and result in approximately $1.44 being distributed to each Authorized Claimant eligible for payment in a second distribution.

20. Consequently, it would be impractical and inefficient for A.B. Data to make an additional distribution of the remaining funds in the Escrow Account to those eligible Authorized

---

[3] The $11.83 Claim Payment represented a *pro rata* division of the Escrow Account rounded down to the nearest penny, resulting in a residual remainder of $677.77. This amount plus the amount of unclaimed checks ($509,896.66) totals $510,574.43.

Claimants. Pursuant to the Settlement Agreement, such remaining funds may be disbursed via a *cy pres* distribution to the ITRC.

## ADDITIONAL EXPENSES

21. Pursuant to the Settlement Agreement, Drizly agreed to pay all Class Notice and Settlement Administration Costs pursuant to a mutually agreed budget. SA §§ 6(I), 12(D).

22. During the course of noticing the settlement, A.B. Data incurred additional costs that exceeded the originally proposed budget, including costs associated with additional outreach efforts to Class Members during settlement administration. These costs totaled approximately $41,610.02.

23. A.B. Data respectfully requests that it be permitted to deduct these additional costs incurred from the remaining funds in the Escrow Account before any *cy pres* distribution is made.

I declare under penalty of perjury that the following is true and correct.

Executed in Apple Valley, MN this 13th day of October 2023.

Mark Cowen
Project Manager
A.B. Data, Ltd.